433 So.2d 705 (1983)
Billy Joe EVERETT
v.
Cynthia Kaye EVERETT.
No. 83-C-0084.
Supreme Court of Louisiana.
June 10, 1983.
*706 James C. Ferguson, Baton Rouge, for applicant.
Jack N. Rogers, Baton Rouge, for respondent.
MARCUS, Justice.
Pursuant to a rule filed by Billy Joe Everett on December 14, 1981, against his former wife, Cynthia Kaye Everett, the latter was ordered to show cause why she should not be held in contempt of court for interfering with her former husband's visitation rights and why the custody of their eight-year-old son, Daniel Lee Everett, should not be changed from her to her former husband. After a hearing, the trial judge found Cynthia Kaye in contempt of court but deferred sentence on the condition that she obey the orders of court. He further ordered that custody of Daniel be changed to his father with visitation rights in favor of his mother. Cynthia Kaye appealed. The court of appeal affirmed.[1] On Cynthia Kaye's application, we granted certiorari to review the correctness of that decision.[2]
On October 14, 1977, the parties were divorced by judgment of a state district court in Galveston County, Texas. Cynthia Kaye was appointed "Managing Conservator" of their minor child with visitation rights in favor of Billy Joe. Subsequently, Cynthia Kaye moved to Baton Rouge, Louisiana. In 1979, Billy Joe brought suit to have the divorce decree recognized and made the judgment of the Louisiana court. Cynthia Kaye answered and reconvened requesting that the visitation rights be modified to reflect the difficulty of interstate visitation. Judgment was rendered on August 29, 1979, recognizing the Texas judgment and making it a judgment of the court but modifying the visitation rights. Subsequently, on June 9, 1980, the visitation rights were further amended and modified.
The evidence adduced at the hearing on the rule for contempt and to change custody reflects that Billy Joe had not seen his son since Easter 1981 and that during the nine months that followed, Cynthia Kaye had on some occasions interfered with his attempts to see or communicate with the child. At the end of the 1981 Easter vacation, Cynthia Kaye drove to a roadside park outside Lake Charles, Louisiana, to pick up her son in order to reduce the driving of her former husband who was recovering from an illness. When Billy Joe did not arrive at the time agreed upon,[3] Cynthia Kaye became quite upset. The following summer, Billy Joe's attempts to arrange visitation were unsuccessful. He was entitled to one month summer visitation to be divided into *707 two periods. He called twice to arrange visitation. On the first occasion, the child asked to finish his softball season. Billy Joe agreed. On the second occasion, the child asked if he could go to Atlanta to visit relatives whom he had not seen in five years. Billy Joe again agreed and attempted to arrange to pick up the child in Atlanta at the end of the visit; however, Cynthia Kaye refused to cooperate. In early August, the child called his father expressing a desire to visit. The child informed him that his mother had given him permission. Billy Joe proceeded to make airline reservations for the child to fly to Texas. After doing so, he contacted his former wife to inform her of the arrangements. She was afraid of flying and claimed that her attorney had never given her a copy of the final amendments to the visitation order which would have permitted the child to be placed on a commercial airline at her former husband's option. She refused to let the child fly and told Billy Joe that he would have to come to Baton Rouge to see the child. He said "fine" and appeared at her door at nine o'clock the next morning at which time she refused to let him see the child because he had not given her advance notice.[4] After this incident, Billy Joe did not attempt to see his son again until Thanksgiving. After arrangements had been made, he testified that his former wife said to "forget it." Her response was that she had told her son that he could visit his father and she cancelled the arrangements only after her son indicated that he preferred to spend the holiday with his brother, sister and her. Billy Joe also sought Christmas visitation. Cynthia Kaye again refused to let the child fly, and Billy Joe's work schedule did not allow him to pick up the child who was in Tennessee visiting grandparents. Billy Joe's attempts to call his son were often met with excuses. On the other hand, Cynthia Kaye testified that they were often valid and that she had never refused to let the child talk to his father.
The child also testified at the hearing. He stated that his mother had never said anything to try to turn him against his father and that he loved both his parents. In response to questioning by the court, the child said that he would live with his father if ordered to do so but preferred to live with his mother and "brother and sister that loved [him]." Daniel was a straight-A student in a magnet school, outgoing and participated in outside activities. His softball coach testified that Daniel was well-liked, a fine athlete and easy to coach.
Cynthia Kaye remarried but was divorced in 1981. No children were born of the marriage. In addition to Daniel, Cynthia Kaye had a boy, age fourteen, and a girl, age twelve, by a former marriage. All three children lived with her in a three-bedroom house in Baton Rouge where they had resided for the past two years. Cynthia Kaye was a licensed barber and worked from 9 to 5; however, her older son would stay with Daniel after school until she got home from work. She testified that when Daniel needed special transportation for school activities, she would arrange for time off from work. She further testified that she never attempted to destroy Daniel's love for his father.
Billy Joe was remarried. One child, age three, had been born of that marriage. Also living with Billy Joe and his new wife were her nineteen-year-old daughter by a prior marriage, his seventeen-year-old daughter by a prior marriage, and an infant girl of whom they had temporary protective custody. They lived in a four-bedroom house in Texas City, Texas. Billy Joe was employed as a laborer in the maintenance department of Union Carbide at the Texas City plant. His wife, a licensed real estate broker, was not working; she intended to stay home "until the children [went] to school."
At the conclusion of the hearing, the trial judge rendered oral reasons for judgment. First, he found Cynthia Kaye in contempt *708 for "thwarting" the visitation rights of Billy Joe. However, he delayed imposition of sentence and placed her on probation on the condition that she obey the orders of court. Next, he addressed the issue of custody. He recognized that "the sole criterion in cases of this type is the best interest of the child." Although stating that he had considered "all of the surrounding facts and circumstances," he first mentioned the fact that "Mr. Everett's visitation has been largely thwarted since Easter of 1981." He observed that Cynthia Kaye had "carved out a relatively stable life for herself" and that Daniel seemed to be doing well in school and to be well-adjusted. He also observed that Billy Joe's family presented "an extremely stable, happy relationship." Then, he returned to the "visitation problem," and, finding that Cynthia Kaye had thwarted the possibility of Daniel developing a good relationship with his father and noting that the boy "may very well thrive from having a home in which a male figure can give him guidance," he ordered that the custody of Daniel be changed from his mother to his father.
The court of appeal, finding no abuse of discretion, affirmed the judgment of the trial judge. Cynthia Kaye contends the trial judge erred in placing undue weight on the fact of her contempt in finding that it was in the best interest of the child to change custody. We agree.
The best interest of the child is the sole criterion in a change of custody case. La.Civ.Code arts. 157 A and 146 E; Bordelon v. Bordelon, 390 So.2d 1325 (La. 1980). Stability and continuity must be considered in determining what is in the best interest of the child. Johnston v. McCullough, 410 So.2d 1105 (La.1982); Bordelon v. Bordelon, supra. Upon appellate review, the determination of the trial judge is entitled to great weight and will not be disturbed unless a clear showing of abuse of discretion is made. Bordelon v. Bordelon, supra. Custody should not be changed when to do so would punish a parent for past behavior when there is no proof of a detrimental effect on the child or children. Cleeton v. Cleeton, 383 So.2d 1231, 1235 (La.1980) (on rehearing).
In the instant case, Daniel, age eight, had been in his mother's custody for almost five years and had done exceedingly well. He was a straight-A student, outgoing and engaged in outside activities. The testimony that he was happy and well-adjusted was uncontroverted. The child testified that he loved both parents and would go with his father if the court ordered him to do so but preferred to remain with his mother, brother and sister. Clearly, either parent could provide a comfortable, suitable and loving home for the child. We consider that the trial judge gave undue weight to his finding that Cynthia Kaye was in contempt for thwarting her former husband's visitation with the child. Interference with visitation alone is not a sufficient reason to change custody absent a showing of a detrimental effect on the child. No such showing was made here. An award of custody is not a tool to regulate human behavior. The only object is the best interest of the child. Cleeton v. Cleeton, supra. We do not consider that it was in Daniel's best interest to have custody changed in this case. The trial judge clearly abused his discretion in doing so. The court of appeal erred in holding otherwise. We must reverse.

DECREE
For the reasons assigned, the judgment of the trial court and the affirmance thereof by the court of appeal are reversed insofar as they change the custody of Daniel Lee Everett from his mother, Cynthia Kaye Everett, to his father, Billy Joe Everett. It is ordered that the child be returned to his mother upon finality of this decision; visitation rights previously granted in favor of Billy Joe Everett are reinstated. The case is remanded to the trial court for further proceedings in accordance with law. Costs of this appeal are assessed against Billy Joe Everett.
NOTES
[1] 422 So.2d 1268 (La.App. 1st Cir.1982).
[2] 429 So.2d 125 (La.1983).
[3] Billy Joe testified that he was only twenty minutes late due to traffic. Cynthia Kaye contended he had been an hour and a half late.
[4] The visitation order as amended on August 29, 1979, provided that all visitation was subject to one week advance notice.