513 So.2d 454 (1987)
Danny L. EZELL, Plaintiff-Appellee,
v.
Sonni Lynn Ezell KELLEY, Defendant-Appellant.
No. 18921-CA.
Court of Appeal of Louisiana, Second Circuit.
September 23, 1987.
Rehearing Denied October 22, 1987.
*455 S.E. Lee, Jr. and James Stephens, Winnsboro, for defendant-appellant.
David F. Baughn, Vicksburg, Miss., for plaintiff-appellee.
Before MARVIN, JASPER E. JONES, FRED W. JONES, Jr., JJ.
JASPER E. JONES, Judge.
This is an action to modify a joint custody judgment. The plaintiff is Danny L. Ezell and the defendant is Sonni Lynn Ezell Kelley. Defendant appeals the judgment of September 3, 1986, which altered the joint custody plan contained in the January 21, 1986 divorce judgment contending the trial court erred in modifying the former joint custody plan. The principle change in the joint custody plan found in the judgment appealed was the granting to the father the custody of the two boys of the marriage during the nine months school year and granting the mother the custody during the summer months. We reverse.
The plaintiff and defendant were married in August, 1972 and they established their matrimonial domicile in Madison Parish. Two children, Stephen and Tyler, were born of the marriage. Plaintiff and defendant obtained a divorce on January 21, 1986 and entered a consent judgment for the joint custody of their children. The consent judgment awarded defendant physical custody during the nine months of the year the children would be in school and awarded plaintiff physical custody during the summer months.
Subsequent to the divorce, plaintiff moved to Ovando, Montana where he is employed as a hunting and camping guide and has remarried. He resides with his spouse and her daughter by a prior marriage. Defendant has also remarried.
On August 12, 1986, at the end of his physical custody period, plaintiff filed a rule to amend the joint custody plan to provide that he exercise physical custody during the school months and defendant exercise physical custody during the summer months. The trial court granted the change in custody as prayed for by plaintiff and defendant appealed.
The sole issue on appeal is whether the trial judge erred in amending the original custody judgment.[1]
Issue No. 1Modification of The Original Custody Judgment
Defendant contends the evidence was insufficient to warrant a change in the original custody judgment. She argues she raised the children from birth, with the exception of the time plaintiff exercised physical custody during the summer of 1986, and has a very close relationship with the children. Defendant contends the trial judge based her decision largely upon the testimony of plaintiff's expert, Ms. Meriweather, who saw the children only one time. She argues Ms. Meriweather's recommendation that the children reside with the plaintiff during the school months was based upon erroneous information furnished by plaintiff and after talking to the children who had just returned to Louisiana after spending the summer in Montana.
Plaintiff contends the trial court considered defendant's relationship with the children and based its decision on whether to amend the original custody judgment on the entire record and not just upon the testimony of Ms. Meriweather.
The best interest of the child is the paramount consideration in a change of custody case. LSA-C.C. arts. 146(E) and *456 157(A).[2]Bergeron v. Bergeron, 492 So.2d 1193 (La.1986); Key v. Willard, 488 So.2d 1147 (La.App. 2d Cir.1986). To justify a change in custody, there must be a showing of a change in circumstances materially affecting the welfare of the child. Bergeron v. Bergeron, supra; Turner v. Turner, 455 So.2d 1374 (La.1984). Stability and continuity must be considered in determining what is in the best interest of the child. Everett v. Everett, 433 So.2d 705 (La.1983); Key v. Willard, supra. Upon appellate review, the determination of the trial judge is entitled to great weight and will not be disturbed absent a clear showing of abuse of discretion. Bergeron v. Bergeron, supra; Everett v. Everett, supra.
In the instant case, plaintiff testified that subsequent to the divorce he moved to Montana where he is employed as an outfitter, which is a hunting and camping guide. He stated an outfitter earns a gross income of $75,000.00 to $130,000.00 a year. Plaintiff married his second spouse and they live with her five year old daughter by a prior marriage, Carla, in a log house situated on 160 acres of land. He testified his children get along very well with his wife and Carla. Plaintiff stated he instituted the present action to change custody because his children indicated a desire to remain in Montana. He testified his wife was willing to care for the children and transport them to and from school, which is about ten miles from their home. Plaintiff stated he thought the divorce had adversely affected the children and they felt more comfortable with the atmosphere in Montana. On cross-examination, plaintiff testified his occupation requires him to be away from home for as long as ten days at a time. He stated the school the children would attend is a small school and one teacher teaches two classes. Plaintiff testified his wife would be required to transport the children to and from school in a four wheel drive during the winter months.
Ms. Patricia Meriweather, a psychiatric social worker, testified she interviewed the children, Stephen, age ten and Tyler, age eight, who stated they wanted to live with their father. Ms. Meriweather stated Stephen felt that his stepfather had taken his mother away from his father and stated his mother and grandmother say bad things about his father. Ms. Meriweather testified both children seem very comfortable with their living arrangements in Montana and enjoy working, hunting, and fishing with their father. She stated the children expressed concern about the fact their mother was traveling around Texas during the summer with their stepfather, who was picking cotton and they feared having to live with their grandmother if they returned to Louisiana. Ms. Meriweather stated the children did not want to live with their mother because of their animosity toward their stepfather. She testified the children stated their mother and stepfather drink and fight, unlike their father and stepmother and that their mother had kicked them and hit them with a broom and a belt. Ms. Meriweather, therefore, recommended that plaintiff be awarded custody during the school months.
Defendant testified she did not kick the children or hit them with a belt. She stated she is a housewife, she raised the children from birth and her present husband earns a good living and takes the children fishing and swimming. She stated the children and their stepfather enjoy a good relationship with each other. Defendant testified the children enjoy visiting with their grandparents who live nearby. She admitted drinking a wine cooler in front of the children, but testified she does not drink anymore and had never been intoxicated in *457 front of the children. Defendant testified she and her husband have a three bedroom house with a big yard in Baskin, and the children have a number of friends in the community. She denied telling the children bad things about their father. Defendant stated the children, upon their return from Montana, indicated a desire to live with her and her husband.
Ms. Davetta Mayo testified she lived by defendant in Winnsboro and saw the defendant and children daily. She testified the defendant disciplined the children verbally and she had never observed any other form of discipline being used with the children. She stated defendant provided a secure and stable household for the children who seemed to be happy.
Ms. Ellen Burrier testified she lives in the same community as defendant and her children and sees them twice a week. Mr. Burrier stated the children get along very well with their mother and stepfather.
Mr. Sonny Stephens, defendant's father, testified he lives near defendant and he sees her and the children at least twice a week. He stated the children had a stable and healthy relationship with their stepfather. He stated he had observed defendant discipline the children and she did not use excessive force. He testified the defendant primarily disciplined the children by verbal chastisement along with an occasional lick with her hand. Mr. Stephens testified defendant's relationship with the children was very good.
Mrs. Ruth Stephens, the childrens' grandmother, testified defendant and the children have a happy and healthy relationship. She denied saying anything to the children derogatory about their father. Mrs. Stephens testified the children get along very well with their stepfather.
Though plaintiff has remarried, moved to Montana, acquired a new home and entered a new occupation, he has failed to show a change in circumstances materially affecting the welfare of the children. Defendant has raised the children from birth and exercised physical custody of the children for nine months following the judgment of separation and divorce judgment. Each judgment awarded joint custody with the defendant having the custody during the school year. The evidence establishes that the children enjoy a healthy and stable relationship with their mother, stepfather and grandparents, and the children do well attending school in Franklin Parish. The stability and continuity of these relationships is an important factor in considering what is in the best interest of the children. Everett v. Everett, supra.
The plaintiff's occupation as an outfitter will require him to be away from home for extended periods of time. The children would be required to attend a small school in Montana which is ten miles from their home and plaintiff's wife would be required to transport them to school in a four wheel drive during the winter months due to snow. These factors do not reflect a change in circumstances in the best interest of the children.
Ms. Meriweather's recommendation was based largely upon the preference expressed by the children during their interview with her. A child's preference, with no explanatory evidence, is not a material change of circumstance affecting a child's welfare. Bergeron v. Bergeron, supra. Ms. Meriweather testified the children expressed a desire to live with their father because they resented their stepfather, feared they would have to live with their grandmother when they returned to Louisiana and their mother and grandmother said bad things about their father.
The childrens' fear of having to live with their grandmother upon their return to Louisiana was unfounded. The testimony establishes that defendant has always maintained a suitable home for the children in Franklin Parish. The fact that defendant travels around Texas during the summer months with her husband who picks cotton is of no consequence because under the original custody plan, plaintiff had physical custody during the summer months. The defendant, a full time housewife, will be at home with her children in Franklin Parish throughout the nine *458 months of the school year while they attend Baskin Public Elementary School.
The evidence further establishes that the children have a close relationship with their stepfather and defendant and that neither the defendant nor her mother said derogatory things to the children about their father.
Plaintiff failed to corroborate any of the information relied upon by Ms. Meriweather in making her recommendation other than stating his sons enjoyed their summer activities in Montana and preferred to remain with him. The plaintiff did not testify his former wife used excessive punishment upon the boys while he lived with her nor did he allude to any excessive drinking by his former wife during their marriage. He did not support the factual allegation relied upon by Meriweather that the children dislike their stepfather because the stepfather caused their parents' separation. The plaintiff, while on the witness stand, failed to offer eye-witness corroboration of many of the facts relied upon by Meriweather, though he should have been able to supply from his own knowledge corroboration of these facts. Plaintiff established no change of circumstances other than his new wife, new home and job in Montana.
The preference of the children, relied upon by Ms. Meriweather, was based upon factors which were rebutted at trial and, therefore, does not constitute a material change affecting their welfare. The totality of the record establishes that the two boys enjoyed their summer shooting squirrels and gophers and visiting with their father in Montana and these summer activities which had just occurred created their preference for the nine months custody with their father.
The trial judge, at the close of the evidence, interviewed the children in chambers, without a court reporter and out of the presence of the attorneys. This procedure prevented any additional reasons for the preference of the children from appearing in the record, deprives this court of an opportunity to review the testimony of the children and provides no evidentiary support for the judgment appealed. See Dykes v. Dykes, 488 So.2d 368 (La.App. 3d Cir.1986), writ den., 489 So.2d 1278 (La.1986). The trial judge, in oral reasons for judgment, failed to articulate any facts showing a change in circumstances materially affecting the welfare of the children which would justify a change in the original custody plan.[3] There is no testimony of Sonni Stephens Ezell Kelley, mother of the children, nor of Mrs. Ruth Stephens, the grandmother of the children, that contain any justifiable indication, inference or connotation that the relationship between the two Ezell boys and their stepfather is not excellent. The trial judge's statement to the contrary is not supported by the record. The testimony referred to by the trial judge more properly relates to the general uncomfortable experience that a divorce creates for the children of the marriage. The testimony of the children's mother, grandmother, grandfather, and Mrs. Burrier, all of whom had frequently seen the boys with their stepfather, establishes the children had a good relationship with him.
Plaintiff has failed to show a change in circumstances materially affecting the welfare *459 of the children. We conclude the trial judge abused her discretion in amending the original judgment to provide that plaintiff exercise physical custody during the school months and defendant exercise custody during the summer months.
For the foregoing reasons, the judgment appealed is reversed and the joint custody plan and child support provisions contained in the divorce judgment of January 21, 1986 are reinstated. All costs below and on appeal are assessed against Danny L. Ezell.
Reversed.

ON APPLICATION FOR REHEARING
Before HALL, JASPER E. JONES, MARVIN, FRED W. JONES and SEXTON, JJ.
Rehearing Denied.
NOTES
[1] Defendant briefed six assignments of error; however, our resolution of one issue reversing the alteration of the initial joint custody plan renders a consideration of the others unnecessary.
[2] LSA-C.C. art. 146(E) provides:

E. "Any order for joint custody, or any plan of implementation effected pursuant to Paragraph A of this Article, may be modified or terminated upon the petition of one or both parents or on the court's own motion, if it is shown that the best interest of the child requires modification or termination of the order. The court shall state in its decision the reasons for modification or termination of the joint custody order if either parent opposes the modification or termination order."
LSA-C.C. art. 157(A) provides:
A. "In all cases of separation and divorce, and change of custody after an original award, permanent custody of the child or children shall be granted to the parents in accordance with Article 146."
[3] (OFF THE RECORD)

JUDGE RAGLAND: "... The Court is of the opinion that Mrs. Meriweather is correct when she thinks that at the present time the best thing for these children would be to move them to their father. They are boys; they're not girls, and I think they need his training and they need the positive aspects of that home for right now. And transfer the children back to the mother in the summertime. But I think they should stay there for this winter. I think that one thing that was commented by Sonni's mother, she said that she's worked very hard, here in this last testimony... that Sonni tried to keep friction down. And she made that type of remark more than once. If she had to try to keep it down, there must be friction here that the boys feel. And there must be that jealousy that Sonni mentioned. And I think as long as those children have that resentment towards Glenn, it could even work to the detriment of his relationship with you, Sonni. I don't think they intend to have the resentment, but I think it's under there. I think that (sic) love you both very much, but I do think that it will be to the best interest of the children to place them with the father for the winter months and with the mother for the summer months. So we will reverse the previous decision."