535 So.2d 969 (1988)
Danny L. EZELL, Appellee,
v.
Sonni Lynne Ezell KELLEY, Appellant.
No. 19946-CA.
Court of Appeal of Louisiana, Second Circuit.
September 21, 1988.
*970 Sonny N. Stephens, Dennis Grady Stewart, Winnsboro, for appellant.
David Baughn, Vicksburg, Miss., for appellee.
Before HALL, FRED W. JONES, Jr. and SEXTON, JJ.
FRED W. JONES, Jr., Judge.
This case involves a continuing child custody dispute between the parties, and is before this court on appeal for the second time. See Ezell v. Kelley, 513 So.2d 454 (La.App.2d Cir.1987)
Danny L. Ezell and Sonni Lynn Ezell were awarded a judgment of divorce, which incorporated a consent decree granting them joint custody of their two children, Stephen, then age ten, and Tyler, age eight, on January 21, 1986. Pursuant to this original agreement, Sonni Lynn Ezell, the mother, was granted primary custody of the children for the nine month school year, and Danny Ezell, the father, was to have them for the summer.
Both parties remarried after the divorce and Danny Ezell moved to Montana, where he is employed as an outfitter and hunting guide. In August 1986, he filed a rule to change the original custody order to make him the primary custodial parent during the school year and the mother the primary custodial parent during the summer months. The trial court granted this request and signed the judgment for the modified plan on September 3, 1986.
The children's mother, now Sonni Lynn Ezell Kelley, appealed this judgment. On April 22, 1987, before this court rendered its decision, she also filed a rule for contempt against the children's father, claiming he refused to allow her to visit the boys during the Easter or Spring break, as stipulated in the second custody order. On June 5, 1987, Ezell filed a rule for contempt against Mrs. Kelley, based on her alleged failure to communicate with him regarding their differences over the children. He also sought sole custody.
Both rules were consolidated for trial and heard on June 12, 1987. The mother filed exceptions of vagueness and lack of jurisdiction, and a motion for continuance, all of which were denied. Her attorney argued that the district court had no jurisdiction to hear the matter in light of the pending decision of this court, but the trial judge ruled that her court was only divested of jurisdiction regarding those matters which were before this court on appeal, and agreed to hear evidence regarding events which took place after the August 1986 hearing.
At the June hearing, Danny Ezell and his present wife both testified that the boys had been doing well in school and seemed *971 happy living with them in Montana. Ezell stated the school the boys attended in Montana did not provide Easter or spring vacation, but that he had brought them along on a business trip to Louisiana in March. He admitted that he did not notify his ex-wife, but said he told both boys they could call and visit their mother if they wanted to. Neither chose to do so, however, and Ezell testified that they both told him they were afraid they would have to go to court again if they contacted their mother.
Mrs. Ezell testified that the boys were not denied access to or communication with their mother, but that they were sometimes outside on their 160 acre farm when she called, and therefore unable to come to the phone. She also stated that they sometimes appeared upset after reading letters received from their grandmother.
In her testimony, Mrs. Kelley, the children's mother, described the difficulties she experienced seeing and talking with the children while they were in their father's custody. She testified that she called Montana frequently but was rarely allowed to talk to them. She accidentally learned of their visit to Louisiana in March of 1987, but was not allowed to see them then either. She said the boys told her they wanted to see her, but their father told them they did not have time.
Ruth Stephens, Mrs. Kelley's mother, admitted writing several letters to the boys in which she criticized their father and his new wife, but stated she only meant to convey her love and concern for the children, and to "give them the facts." Mrs. Kelley's brother, an attorney, stated he filed an intervention on behalf of DHHR in December, without Mrs. Kelley's knowledge, in an attempt to have the children placed in the state's care. He stated that his motive was concern for the welfare of the children.
The trial judge ruled inadmissible the expert testimony of Carol Martin, a social worker Mrs. Kelley sought to call for the purpose of rebutting Ezell's evidence that the children wanted to remain with him during the school year. Ms. Martin's testimony was proffered, and she stated that during their interview, the older child expressed a desire to live with his mother during the school year and his father during the summer, and the younger child said he wanted to live with his mother year round. The reason given by the children, she said, was that their father's job caused him to be traveling and away from home much of the time during the fall and winter months.
On June 12, 1987, after hearing the evidence, the trial judge immediately dismissed the contempt rules for insufficient evidence, and took the issue of custody under advisement. On September 23, 1987, while the case was still under advisement, this court reversed the August 1986 ruling of the trial judge because the father had failed to show a change in circumstances justifying modification of the original custody arrangement, and reinstated the original decree. See Ezell v. Kelley, supra. In November 1987 the mother enrolled the children in school in Louisiana where they remain.
On December 11, 1987, after this court's decision was rendered, the trial court rendered judgment maintaining its earlier modification of the original decree, in spite of this court's previous reversal of that modification. The judgment also rejected the father's request for sole custody.
In written reasons, the trial judge explained that the basis of her decision was the evidence of animosity toward Ezell and his wife on the part of the mother's family, and her concern that this would create a traumatic living environment for the children. She also relied on her in-chambers interview of the children in which they reportedly complained of "harassment" by their mother and grandmother about the latest custody order. [It should be noted, however, that no court reporters or attorneys were present during this interview, so appellate consideration of this testimony is impossible.] She concluded that in light of the greater amount of conflict and less stability existing in the mother's home, the best interests of these children would be served by maintaining them in their father's *972 custody for the greater part of the year.
Mrs. Kelley sought and obtained a stay order from this court, staying the execution of the trial court judgment pending further orders. Ezell also sought supervisory writs, seeking to have the stay order overturned on grounds that it in essence granted a suspensive appeal, which is prohibited in child custody cases. Ezell's writ was denied.
Mrs. Kelley then appealed the trial court's June 1987 judgment, claiming error in the modification of the original custody decree absent a showing of changed circumstances, the refusal to admit her expert testimony, and the denial of her motion for continuance and exceptions of vagueness and lack of jurisdiction. She claims that Ezell has presented no evidence that the situation has changed since the August 1986 hearing. She thus argues that since this court ruled the August 1986 modification erroneous, the action of the trial court in upholding its earlier modification, and effectively overturning this court's decision, is also erroneous and should be reversed.
On appeal, Ezell takes the position that the trial court was correct in amending the original custody order. He argues that the year the children spent in school in Montana and their favorable adjustment to the new living arrangements constitute a sufficient showing of changed circumstances to justify modification of the original decree. He further points to the instability of the home environment provided by the mother as a factor for this court to consider, and also submits that the trial court acted properly in denying the pretrial motions and excluding the expert testimony.
The best interest of the child is the paramount consideration in child custody cases. La.C.C. Articles 146(E) and 157(A); Bergeron v. Bergeron, 492 So.2d 1193 (La.1986); Foy v. Foy, 505 So.2d 850 (La.App.2d Cir.1987). Continuity and stability of environment are important factors to consider in determining what is in the child's best interests. Everett v. Everett, 433 So.2d 705 (La.1983); Dungan v. Dungan, 499 So.2d 149 (La.App.2d Cir.1986). In order to justify a change in custody, the party requesting modification must show that there has been a change in circumstances materially affecting the child's welfare since the original decree. La.C.C. Art. 157(A); Bergeron, supra. The decision of the trial judge in child custody matters is entitled to great weight and will be disturbed on appeal only in cases of clear abuse of discretion. Everett, supra; Foy, supra.
In this case there has been no showing that a change in circumstances materially affecting the children's welfare has occurred since this court's prior reinstatement of the original decree. The only evidence of changed circumstances offered by Ezell are the letters written to the children by the maternal grandmother, the uncle's attempt to have the children placed in the state's care, and the fact that the boys had been doing well in a Montana school for one year. However, the father should not be allowed to rely on the fact that the children had been doing well under his care, when this court has ruled he was erroneously given custody by the trial court. The other factors did not materially affect the welfare of the children.
Ezell also failed to demonstrate that it is not in the best interest of these children to reside with their mother during the school year, in accordance with the original decree. As this court observed in its prior opinion:
"[t]he plaintiff's occupation as an outfitter will require him to be away from home for extended periods of time. The children would be required to attend a small school in Montana which is ten miles from their home and plaintiff's wife would be required to transport them to school in a four wheel drive during the winter months due to snow. These factors do not reflect a change in circumstances in the best interest of the children." Ezell v. Kelley, supra, at 457.
The testimony adduced at the second hearing indicates the situation described above has not changed. As also noted in *973 this court's previous opinion, Mrs. Kelley has always maintained a suitable home for her children. Since she is a full-time housewife, she is able to be at home with them during the school year.
These children have been shuffled back and forth between parents for some time now. They were originally residing with their mother for the school year and their father in summer, then relocated to Montana to live with their father for one school year, and are now once again residing with their mother in Louisiana. When the factors of continuity and stability of environment are considered, it is clear that another relocation would not serve their best interests. The trial judge's decision to the contrary was a clear abuse of discretion.
For these reasons, the judgment appealed is REVERSED and the joint custody plan contained in the divorce judgment of January 21, 1986 is reinstated, with all costs of appeal assessed to Danny Ezell.