liHIGHTOWER, Judge.
The mother of two seven-year-old twin boys appeals a judgment that modified an earlier considered decree by transferring domiciliary custody from her to their father. Finding a clear abuse of discretion, we reverse.
Background
Tammy Pierce and Christopher Laing Freeland married on August 15, 1987, and their union produced twin boys, Ronny and Christopher, bom May 20,1988. After separating in December 1989, the couple obtained a divorce in Ashley County, Arkansas, their matrimonial domicile, on July 30, 1990.[1] In that same decree, the foreign court granted custody of the children to the mother subject to specified visitations by the father.
When both Pierce and Freeland subsequently moved to Louisiana, the district court in East Carroll Parish made the Arkansas judgment executory in this state, while awarding joint custody with the mother as domiciliary parent, enunciating a visitation schedule, and ordering the father to pay $200 per month in child support. Additionally,' in denying a request for summer visitation rights, the court admonished Freeland to take better care of the children when they visited with him.
In the spring of 1992, the twins went to live with their father in order that they, according to the mother, could attend a better school. Yet, when appellant later attempted to regain custody of the children, her efforts proved unsuccessful. Eventually, on April 8, 1993, with the siblings still in his home, Freeland filed an action claiming his former wife had voluntarily surrendered the two boys to him and that the prior award should be modified to make him the domiciliary parent. Pierce responded with a motion to enforce the existing judgment and demanding the return of the youngsters. In an October 1993 judgment, after a full evidentia-ry hearing that disclosed no voluntary surrender or any other sufficient reason to warrant a change, the district court continued the mother’s status as domiciliary parent.
^Subsequently, the boys remained in Pierce’s custody with Freeland exercising regular visitation rights. During a weekend visit in early 1995, however, Freeland’s present wife, Tina Freeland, slapped Christopher in the face after he misbehaved. When the child returned to his mother with a scratch mark on his cheek, Pierce called the police and precipitated a warrant for the stepmother’s arrest.[2] In further response and upon advice of counsel, Pierce unilaterally discontinued Freeland’s visitations. He then filed a rule, on January 30, 1995, seeking to regain those privileges and again requesting modification of the existing custody arrangement.
In a preliminary order on February 23, 1995, the district court reinstated appellee’s visitation rights, directed the parties to undergo evaluation by a court-appointed psychologist, Dr. Tony Young, and refixed the rule to change custody for late April. After several continuances, the matter finally went to trial on October 26, 1995, when Pierce appeared without counsel.[3] The central item *548 of evidence consisted of Dr. Young’s testimony as well as his report. In addition, the court heard the parties, the stepmother, and Pierce’s most recent ex-spouse.
The trial judge, obviously unhappy with the parents’ inabilities to resolve their differences amicably, delivered his ruling from the bench immediately upon the conclusion of the evidence. Although seriously questioning the propriety of uprooting the children from their school situation, and despite not finding Pierce to be a “bad mother,” the court decided at considerable length to change the joint custody arrangement and designate Freeland the domiciliary parent subject to the mother’s reasonable visitations. That determination stemmed primarily from Dr. Young’s opinion, based upon various psychological evaluation tests, that the father and stepmother would generally be better Rparents. Following the denial of her motion for a new trial, Pierce instituted the present appeal urging several assignments of error.
Discussion
In her third assignment, the mother asserts that appellee failed to meet the heavy burden imposed by Bergeron v. Bergeron, 492 So.2d 1193 (La.1986), upon a party seeking modification of a considered custody decree.[4] Finding merit in this argument, we reverse on that ground and pretermit any discussion of appellant’s remaining complaints.
After a considered decree of permanent custody, the party seeking a change bears a heavy burden of proving that the continuation of the present custody is so deleterious to the child as to justify a modification, or of proving by clear and convincing evidence that the harm likely to be caused by a change of environment is substantially outweighed by its advantages to the child. Bergeron, supra; Weems v. Weems, 548 So.2d 108 (La.App.2d Cir.1989); Lunsford v. Lunsford, 545 So.2d 1279 (La.App.2d Cir.1989). Parenthetically, that standard applies even-following an initial considered decree between parents and non-parents. Sheppard v. Hood, 605 So.2d 708 (La.App.2d Cir.1992).
Underpinning this rule is the desirability of ending litigation and the undesirability of changing the child’s established living mode except for imperative reasons. Bergeron, supra. Furthermore, notwithstanding that the child’s best interest is always paramount, where the opportunity has previously existed to litigate fully and fairly an award of custody, subsequently imposing a heavier burden upon the plaintiff protects both his adversary and the child from the vexation and expense attending multiple unjustified lawsuits, conserves judicial resources, and fosters reliance on court actions by minimizing the possibility of inconsistent decisions. Id.
Here, in its oral reasons, the district court expressed great concern about the harm that could result from removing these two first-graders from their school, particularly any distress associated with separating from friends, teachers, and familiar surroundings. ^Moreover, the trial judge acknowledged both his uncertainty as to what actually would be best for the children and his conviction that the parents, rather than he, should be making that determination. Yet, as previously mentioned, his ultimate conclusion relied principally upon Dr. Young’s report and impression that the twins would be “better off’ with the father.
According to the psychologist, the mother “appeared” to have some emotional instability. Although basing that evaluation on certain elevated scales produced in his tests, he failed to make a definitive assessment, choosing instead to utilize very qualified terms such as “some indication,” “tends to be,” “may be,” and “may have,” in expressing his “concerns” about the mother’s psychological profile. Finally, he noted that the clinical characteristics exhibited by Pierce “might lead” a parent to overburden a child emotionally. Consequently, deeming the father and stepmother to be more psychologically se *549 cure, he felt the children would be better off with them. This alone, however, does not demonstrate that continued custody with the mother, more probably than not, would be detrimental to the children. Cf. Ezell v. Kelley, 513 So.2d 454 (La.App.2d Cir.1987).
Directly put, the evidence does not establish that appellant is an unfit mother. What is more, the trial judge essentially conceded this, despite criticizing Pierce for having triggered the present proceedings by reporting the suspected child abuse to the police. Said another way, nothing presented by the father shows that the children are unhappy with the mother, or are not properly cared for and loved by her. Nor is there any significant evidence that her “emotional instability,” as perceived by Dr. Young, has in any way affected the children.[5]
15Neither did Freeland contradict his ex-wife’s testimony concerning the condition of her home and the amenities provided the twins there.[6] Other unchallenged evidence showed she is very active in the boys’ school activities, is a Cub Scout den mother, has the children in a baseball program, and provides them with various entertainment and recreational activities. Beyond that, their kindergarten grades improved greatly under maternal care, when compared with the partial school year they spent with the father. Furthermore, even her recent former spouse, Billy Byrd, described Pierce as an excellent parent toward his own son by another marriage.
We are not unmindful that the record also reflects that the father and stepmother are competent parents, and can provide an adequate home for these two children. That fact alone, however, does not sustain the heavy burden commanded by Bergeron.
We also recognize, of course, that the trial court’s determination in custody matters is entitled to great weight and should be disturbed on appeal only when there is a clear abuse of discretion. Lunsford, swpra. Even so, in the present matter, appellee woefully failed to meet his burden of clearly showing that the physical, moral, or emotional environment provided by the mother is detrimental or inadequate for the children, or that the benefits available to them in the father’s home justify removing these young boys from the primary residential care of their mother which, except for a brief period of time, they have enjoyed since birth. Therefore, finding the adjudication sub judice to be manifestly unwarranted, we reverse the district court decision modifying the prior considered custody decree. Cf. Johnston v. McCullough, 410 So.2d 1105 (La.1982); Sheppard, supra; Weems, supra; Lunsford, supra; Ezell, supra.
^Conclusion
For these reason, the appealed judgment naming Freeland as the domiciliary parent is reversed, and the earlier joint custody decree designating the mother in that capacity is reinstated. All costs, here and below, are assessed against the father.
REVERSED.

. Pierce subsequently divorced another husband and, prior to the present trial, apparently discontinued using his surname, Byrd.

. Authorities later dismissed the charge, after an investigation and negative response by a grand jury.

.Sometime after the last continuance, Pierce released her original attorney and attempted to obtain the services of another. On the morning of trial, however, she appeared in proper person and asked for yet another continuance. She stated that, on the previous day, she had been told that her then-attorney had decided not to *548 handle the case and had not subpoenaed any witnesses. Despite her assertions that she stood unprepared to proceed, the district judge denied the requested continuance, thus requiring appellant to act as her own advocate.

. Appellee concedes that the Bergeron standard controls here, but maintains he met that burden.

. Although the father maintained that appellant told the children she suffered from a terminal illness, causing the boys to worry unnecessarily about her medical state, she denied that fact. Hence, Young’s assessment that she might exaggerate her physical problems is simply not well supported. Moreover, with the testimony showing Pierce had undergone a number of surgeries and had traveled to New Orleans for medical treatment, we do not find it inconceivable that youngsters of such tender age would be greatly concerned about that parent's entry into the hospital.

. Appellant showed pictures of her home to the trial judge, but did not introduce them into evidence.