MOORE, J.
11 This is an appeal of a judgment modifying a joint custody plan by designating the father as domiciliary parent of the 14-year-old male child in place of the mother, terminating the father’s support obligation, and ordering the mother to pay child support. The mother filed this appeal, contending that the trial court abused its discretion by failing to follow the standard for modification of a established custody decree set by Bergeron v. Bergeron.[1] After review, we reverse the ruling, reinstate the original custody plan and remand to the trial court with instructions.
FACTS
Phillip Ray Mulkey (“Phillip”) and Vicki Juanita Harris Mulkey Pyles (“Vicki”) were married on June 26, 1993, and established their matrimonial domicile in Winnsboro, Louisiana. They had one child during their marriage, Matthew Harris Mulkey, who was born on January 19, 1998. The couple separated on April 14, 2000.
On June 8, 2000, the parties entered into a consent decree in which they were granted joint custody of Matthew and agreed to implement a joint custody plan whereby both parents would share equal custodial periods. Phillip was ordered to pay Vicki $147.50 in child support monthly. The consent judgment incorporating these elements was rendered on August 24, 2000.
Phillip filed a rule to finalize the divorce on February 26, 2001, which was granted on March 5, 2001. The divorce judgment included a joint custody implementation plan which provided equal custodial periods with | ¡Matthew. Phillip’s child support obligation was increased to $450.00 per month to accommodate Matthew’s daycare expenses. The plan provided that the custodial arrangement would continue until August 2003 when the issue would be revisited as Matthew reached school age.
Prior to August 2003, on April 15, 2003, Vicki filed a rule to modify custody and increase child support seeking domiciliary custody of Matthew. Vicki also sought *118 child support and requested that Phillip be ordered to pay his share of Matthew’s medical expenses. Phillip filed an answer to the rule and a reconventional demand seeking to be named the domiciliary parent and child support for Matthew in his favor.
After a trial spanning three separate days, the court awarded Phillip and Vicki joint custody, while naming Vicki domiciliary parent and giving her primary custody during the school year. Phillip was granted extensive weekend (every other weekend), holiday and summer visitation. Phillip was ordered to pay $200 per month child support during the school year, $100 per month for June and July, and $125 for the month of August each year. Vicki was ordered to provide health and dental insurance covering Matthew and Phillip was ordered to pay 43% of any uncovered medical, dental and related expenses. She was also awarded the right to claim Matthew on her federal and state income tax and any earned income credit therewith. This considered custody decree was signed and filed into the record on December 9, 2004. No appeal was taken from the judgment incorporating that ruling.
The instant dispute began in July 2011, when Vicki filed a rule for payment of medical expenses and rule to show cause for judgment of past |adue medical support, contempt and attorney fees. Vicki alleged that Phillip had failed to pay his share of Matthew’s uncovered medical expenses amounting to several thousand dollars, and for several hundred dollars for extracurricular activities. Vicki also requested an increase in child support.
Phillip responded with an answer and reconventional demand seeking modification of the joint custody plan in which he would be named domiciliary parent. He requested that his child support obligation be terminated and Vicki ordered to pay him child support. Beginning in 2012, he requested that he be allowed to claim Matthew on his federal and state income tax returns. He also requested relief from Vicki’s failure to maintain health insurance and her refusal to share information with him regarding any proposed medical care for Matthew.
A hearing officer conference was held on November 21, 2011, followed by a recommendation from the hearing officer that Vicki be granted judgment for $4,282.02 as Phillip’s share of uncovered medical expenses and $486.11 for extracurricular activity expenses. The hearing officer also found that Phillip had not carried his burden of proof under Bergeron v. Bergeron, supra, to warrant modification of the joint custody plan currently implemented. Phillip filed a timely objection to the recommendation on December 9, 2011.
The matter came to trial on February 10, April 9 and April 18, 2012. Prior to calling any witnesses, the parties informed the court that a settlement had been reached on all matters except Phillip’s request for modification of custody, child support and income tax-related issues and Vicki’s request for an increase in child support.
I/The trial court interviewed Matthew first utilizing the Watermeier protocol.[2] The court asked Matthew several questions related to school, his friends, his relationship with his parents, siblings from both families, his likes and dislikes, health issues, and daily routine. Briefly summarizing, Matthew stated that he liked and got along well with both his parents, stepfather and stepmother, and stepbrothers, half brothers and half sister. He has several friends who live close to his home in *119 Ruston. His only complaint about the school he attends was that he did not like the noise in the cafeteria. Similarly, he has a very close friend nearby at his father’s home in Winnsboro — his cousin Michael Sullivan.
During the school week at his mother’s house, Matthew usually fixes his own breakfast after his stepfather, Todd Pyles, awakens him and his younger half-brother, Landry, to get dressed for school. Todd is employed as a substitute bus driver and leaves for work around 6:30 a.m. Vicki arrives home in the morning about 7:10 a.m. from her night shift job in time to take him to school each day. She also picks him up from school each day. She takes Matthew to guitar lessons once a week; he also plays clarinet in the school band. Matthew has several close friends who live on his street or in his neighborhood. He recently started playing golf and hopes to play on the school team. Matthew spends considerable time in his room at his mother’s house playing video games on his Xbox.
Matthew’s mother takes him to the doctor, including his pediatrician when he is sick, his diabetes doctor, and his eye doctor once a year. |sMatthew has Type I diabetes, sometimes called juvenile diabetes. He wears an insulin pump to regulate insulin. He would prefer to get a daily shot, but his mother and his diabetes physician want him to use the pump because it can better control the fluctuations in his blood sugar. He sees his diabetes physician every three weeks now because his blood sugar has been fluctuating significantly. The diabetes pump has somewhat limited his participation in sports.
The court allowed Matthew to state, if he wished, what parent with whom he would prefer to live. Matthew told the court that he would like to spend the remaining four years with his father before he goes out on his own, since he has spent the last nine years with his mother. He stated that the reason for wanting to change custody is that most of the people he has a relationship with in Winnsboro are family. He acknowledged that he feels guilty about hurting his mother’s feelings for wanting to live with his father, but said she told him to tell the truth. He said his father asks him every week if he wants to live with him, and he acknowledged that his father will feel bad if he told him “no.”
Matthew’s father, Phillip Mulkey, has been remarried for eight years to Jessica Mulkey. They have two children, Samantha (age 8) and Avery (age 5). Jessica teaches first grade at Baskin Elementary School. Phillip works for the Sheriffs Department in Franklin Parish, and earns approximately $2,850 per month or $34,212 per year. Jessica earns approximately the same as a teacher. Phillip works 12-hour shifts. Until recently, he worked the night shift from 6:00 p.m. to 6:00 a.m., but now works the day shift from 6:00 a.m. to 6:00 p.m. He works a 14-day cycle of |fitwo days on, five days off, five days on, two days off. Phillip’s gross wages in 2011 were $37,278.15.
Phillip denied that he pressured Matthew regarding living with him or that he sought custody of Matthew only after Vicki filed suit for the unpaid medical expenses, stating that Matthew has wanted to live with him since he was around nine years old. Phillip acknowledged that he has not been involved in Matthew’s school work and school activities, but attributes this to a lack of communication and no reports from Vicki, and the fact that he has worked the night shift until recently. He believes that Vicki has tried to thwart his telephone contact with Matthew. Regarding Matthew’s health issues, including diabetes, Phillip has not attended any doctor visits since Matthew was first diagnosed *120 with diabetes. He attributes his lack of involvement to the lack of communication between him and Vicki and she ignores his input. He also thinks that Vicki takes Matthew to the doctor excessively. He indicated that Matthew pretty much handles his medications himself when he stays with him. Phillip said that if he obtains primary custody of Matthew, he will take him to school and pick him up from school, even on his work days. If he is unable to do so, his parents (Matthew’s grandparents) will help him.
Vicki has been remarried to Todd Pyles for 11 years. Todd has two older children from a previous marriage, Brandon who lives at home and Taylor who attends Louisiana Tech. Vicki and Todd have one child together, Landry, age 6. Todd has taken Matthew camping, fishing and hunting, participated with him in the Cub Scout Pinewood Derby. He characterizes his relationship with Matthew as good, but admits that he 17remains secondary in terms of parenting, as Phillip is still Matthew’s father. Todd also testified regarding ongoing medical problems Matthew has with diabetes, asthma and frequent wax buildup in his ears that require visits to an ear, nose and throat doctor. Todd was employed as a lab technician when he met Vicki, but now works as a substitute bus driver after not being able to hold or obtain satisfactory employment in recent years. When Todd was asked by the court how he thought Matthew would react if the court ruled to maintain the current custody decree, he said that Matthew would probably be disappointed. He believed that Matthew had presumed that the custody change was going to be in Phillip’s favor. Todd said that he thought part of the reason Matthew thought that way was because Phillip had recently bought him a dirt bike and a big-screen TV with video games.
Vicki works the night shift as a clinical laboratory scientist at Glenwood Regional Medical Center in West Monroe on a seven days on, seven days off schedule. On her regular work days, she leaves for work between 6:00 p.m. and 8:00 p.m., depending on the day of the week and the schedule. She returns home in the morning in time to take Matthew to school. She earned $80,785.38 in gross wages at Glen-wood in 2011. On one of her off weeks, Vicki takes call at the Green Clinic Surgical Hospital, where she testified that she made about $20,000 in 2011. She also earned $19,854.11 gross wages in 2011 at the Northern Louisiana Medical Center in Ruston. Her total gross income for 2011 was $71,227.49. However, after trial began, she testified that she had just began work at the Green Clinic Surgical Hospital in Ruston working an 8:00 a.m. to 5:00 p.m., Monday through Friday, schedule. She estimated her annual earnings at $60,000.
IsVicki testified regarding a few instances in which she believed that Phillip had not ensured that Matthew had taken all his medications. She customarily sends Matthew to Phillip’s house with a box containing his medications and written instructions. (Phillip denied any knowledge of these instances during his testimony, stating that, if Matthew did not take his medications, he lied to him.) She also testified regarding Matthew’s problems with certain subjects in school; she has hired tutors for him at her own expense during these times. She said that she cooks on average about four nights per week and Matthew prepares his own meals on some nights — usually reheating leftovers or frozen food items. She said she has taught Matthew how to cook and how to wash his own clothes. She also pays for his weekly guitar lessons. Her main worry over granting primary custody of Matthew to Phillip was Phillip would keep track of his *121 medications and assure that the day-to-day fluctuations in his insulin needs are regulated according to his activity.
Based on this evidence and other testimony, the trial court concluded that “Phillip proved several facts showing that there has been a material change in circumstances in this case since 2003.” The court noted that Matthew was a young child when the first custody decree was rendered. Ten years later, he is now entering adolescence and facing the issues that stage of life brings that were not present when he was so much younger. The court determined that Matthew was mature enough to express his paternal preference and has expressed his wish to live with his father the remainder of his youth. In addition to this factor, the court found material changes in each parent’s employment history, including salary increases and |3work schedules, and the availability of each parent to take Matthew to school and spend time with him; the development of Matthew’s medical issues and his medical care; changes in residence and new family relationships; the medical and employment issues of Matthew’s stepfather, Todd; Matthew’s recent declining academic performance and interests, both curricular and extracurricular; and social life, home activities, communication (or the lack of) between Vicki and Phillip regarding Matthew’s medical conditions and scholastic performance.
The trial court concluded that Phillip had not shown the current custody arrangement was deleterious to Matthew under the Bergeron standard. The court noted that Vicki has provided Matthew with an adequate and comfortable life. On the other hand, it found that Phillip had shown by clear and convincing evidence that the benefits to Matthew by making Phillip the domiciliary parent and moving Matthew’s primary residence with him in Winnsboro substantially outweighed any harm that might result from a modification of the previous considered decree.
Because Matthew had enjoyed extensive visitation with Phillip during the current custody arrangement, the court found that little or no harm would result from the change. Matthew had developed close connections with his family and friends in Winnsboro. The court acknowledged that it placed great weight on Matthew’s preference to live with his father and discussed the relevant jurisprudence regarding how much weight to give that preference. Although Matthew’s preference, standing alone, was not enough to modify the decree, Phillip had also shown that he would provide a better environment to deal with the challenges of adolescence as well as | mMatthew’s recent decline of interest in school and lack of self-esteem. The court concluded that under the Bergeron burden of proof, the best interest of Matthew requires that he be placed with the parent whose home environment provides him with the greatest opportunity to thrive and succeed scholastically, spiritually, socially, emotionally and physically in this stage of life, and that Phillip was best able to do so.
Accordingly, the court modified the pri- or decree by naming Phillip as the domiciliary parent with primary custody of Matthew. The court granted Vicki extensive visitation similar to, but slightly greater than, that enjoyed by Phillip under the previous decree. It also terminated Phillip’s child support obligation and ordered Vicki to pay child support in the amount of $718.15 during the school year, with specific adjustments downward for the summer months, and 63.45% of any uncovered extraordinary medical, dental and related expenses. The court also issued an income assignment order to the Green Clinic, Vicki’s employer, for payment of the child support award. Vicki filed this appeal.
*122 DISCUSSION
By her first assignment of error, Vicki contends that the trial court abused its discretion by modifying the previous custody order to designate Phillip as the domiciliary parent of Matthew. Specifically, she alleges that Phillip failed to meet the burden of proof required by Bergeron, supra, and that the trial court failed to properly apply the factors of La. C.C. art. 184 to the facts of this case.
Phillip contends that the trial court did not abuse its discretion, asserting that the court correctly determined that a material change in |1T circumstances had occurred since the considered decree was rendered, and correctly determined that the Berger-on standard was met.
The paramount consideration in any determination of child custody is the best interest of the child. La. C.C. art. 131; Evans v. Lungrin, 97-0541 (La.2/6/98), 708 So.2d 731; Bergeron v. Bergeron, supra; Sebren v. Sebren, 46,076 (La.App. 2 Cir. 12/15/10), 56 So.3d 1032. La. Civil Code art. 134 provides a number of factors for the court to consider in determining the child’s best interest, including the capacity and disposition of each parent to give the child love and affection and to continue the child’s education and to provide the child with food, clothing, medical care and other material needs, the reasonable preference of a child of sufficient age and maturity to express a preference, and the length of time the child has lived in a stable, adequate environment. La. C.C. art. 134; Gray v. Gray, 45,826 (La.App. 2 Cir. 11/17/10), 55 So.3d 826, aff'd, 2011-548 (La.7/1/11), 65 So.3d 1247. The court is not required to mechanically evaluate all the statutory factors, but should decide each case on its own merits in light of these factors. Gray v. Gray, supra; Sawyer v. Sawyer, 35,583 (La.App. 2 Cir. 11/2/01), 799 So.2d 1226. These factors are not exclusive, but are provided as a guide to the court, and the relative weight given to each factor is left to the discretion of the trial court. Sebren v. Sebren, supra. Upon appellate review, the determination of the trial judge is entitled to great weight and will not be disturbed absent a clear showing of abuse of discretion. Bergeron v. Bergeron, supra; Ezell v. Kelley, 513 So.2d 454 (La.App. 2 Cir.1987).
| KThe Bergeron Test
To justify a change in custody, there must be a showing of a change in circumstances materially affecting the welfare of the child. Bergeron v. Bergeron, supra at 1194. If the action seeks to change or modify a custody decision rendered as a considered decree,[3] the party seeking a change bears a heavy burden of proof showing either: (1) that continuation of the present custody arrangement is “so deleterious to the child as to justify a modification of the custody decree,” or (2) of proving by “clear and convincing evidence that the harm likely to be caused by the change of environment is substantially outweighed by its advantages to the child.” Bergeron v. Bergeron, supra at 1200; Evans v. Lungrin, supra.
Importantly, the Bergeron court indicated that the alternative ground (2) for modification was intended for that “narrow class of cases” where “the heavy burden of proof rule”[4] proves too inflexible to permit *123 a modification in those cases where the benefits to the child from a modification “may be so great that they clearly and substantially outweigh” the harm resulting from a change in custody. This standard reflects the long-held jurisprudential precept that “[sjtability and continuity must be considered in determining what is in the best interest of the child.” Everett v. Everett, 433 So.2d 705 (La.1983); Ezell v. Kelley, supra at 456. See also, Bergeron v. Bergeron, supra at 1199-1200.[5]
In this case, the trial court found that Vicki had provided an adequate and comfortable life for Matthew, and the evidence revealed nothing in the home environment which could be considered harmful or damaging to him. Hence, it correctly concluded that Phillip has not met the “heavy burden of proof rule” that the current joint custody plan is so deleterious to the child as to justify modification of the custody decree. On the other hand, applying the alternative rule formulated by the Berger-on court, the trial court concluded that Phillip met his burden of showing by clear and convincing evidence that the harm likely to be caused by the change of environment was substantially outweighed by advantages that Matthew would have if Phillip was domiciliary parent and had primary custody.
“Clear and convincing evidence” means a standard more than a “preponderance,” but less than “beyond a reasonable doubt.” Under this standard, the existence of the disputed fact must be “highly probable,” or “much more probable than not.” Talbot v. Talbot, 2003-0814 (La.12/12/03), 864 So.2d 590; In the Matter of L.M.S., 476 So.2d 934 (La.App. 2 Cir.1985). Bergeron thus requires that the benefits to the child must be clear and substantial, which, for the reasons that follow, we conclude are |14not present in this case.
In this instance, the trial court said that “the clear and convincing evidence presented shows that Matthew should not suffer any significant harm caused by a change of established mode of living.” The court reasoned that Matthew has spent a great amount of time at Phillip’s home, namely weekends, half the holidays and most of the summers, during the past nine years. Thus, it concluded that the transition from one home to the other should not require a great deal of adaptation for Matthew or Phillip and his family.
While we agree that Matthew is familiar with and accustomed to life in Phillip’s home during the times stated, these periods at Phillip’s home have always consisted of weekends, holidays and summers when Matthew did not have to attend school on time, do his homework, go to guitar lessons, participate in band activities after school, and make regular visits to his diabetes physician. Thus the pressures, stresses, strains and required structure of everyday life were not present during these visitation periods. Matthew’s time at his father’s house has been largely play *124 time, although the evidence shows that the current routine of daily life at Phillip’s home probably represents a more traditional routine than Vicki’s, since both Phillip and Jessica work during the day. Although Vicki’s job has required her to be away from home on approximately half of the school evenings and nights, Matthew has an established routine at Vicki’s home which has fostered a degree of personal responsibility, independence and self-reliance in Matthew. We do not know whether Matthew will easily adjust to the more traditional daily routine at Phillip’s house; however, we conclude that | lfithe change of primary residences per se should not be in itself harmful for the reasons stated by the court.
The trial court further concluded, based on its analysis of the material changes in circumstances, that there are the compelling reasons promoting Matthew’s best interest that substantially outweigh any harm that might result from the modification. The court listed three factors — Matthew’s recent lack of interest in school, his need to build self-esteem and self-confidence, and his desire to live with his father for the next four years — that provide compelling reasons to modify the present custody arrangement. The court noted that while Vicki had tried to generate Matthew’s interest in school, Matthew had recently displayed a lack of interest in school. The court then concluded that Phillip had proved that he was the parent whose home environment can provide Matthew with the greatest opportunity to thrive and succeed scholastically, spiritually, socially, emotionally, and physically during this adolescent stage of his life.
After review, we conclude that the record presents little evidence to support the conclusion that making Phillip domiciliary parent offers clear and substantial advantages for Matthew. Phillip has shown little interest in Matthew’s schoolwork for most of the years he has attended school. Although it is clear that Vicki has not fully complied with the custody decree requirements of sharing information regarding to Matthew’s school work, such as sending him copies of report cards, Phillip apparently never protested or exercised his right to demand such information. There is really no reason to think that Phillip will now take a more active interest in Matthew’s school work other than blaming Matthew’s recent poor | ^performance on Vicki. While Matthew, like many children, is not necessarily a model student achieving in the top of his class, the evidence indicates that historically he has made average to above average grades in most courses. When he has struggled with a course, Vicki obtained tutoring for him at her own expense. Matthew’s recent struggles in school or lack of interest appear to coincide with the instant custody dispute. He will be transferring to another school if Phillip is named the domiciliary parent. We suggest that Matthew’s belief that he will be transferring to Franklin Academy in the near future and the negative impact of the instant custody dispute has likely contributed significantly to his lack of interest in his school work.[6]
We also note that the trial court did not consider the impact this modification would have regarding Matthew’s medical issues, especially his Type I diabetes. Our review of the record indicates that Vicki has carried the load completely in this regard by taking Matthew to the physician treating his diabetes every three weeks and daily making sure Matthew takes the *125 appropriate amounts of medication. Matthew also apparently has other medical issues, such as hypothyroidism (which could explain his recent academic disinterest), suffers from asthma, and has ear wax buildup problems that require periodic attention. Phillip’s testimony indicates that he believes Vicki takes him to the doctor too often and pretty much leaves it up to Matthew to take his medications. There is no medical expert testimony in the record to suggest that Matthew’s medical problems are not 117real and serious. Considering that Vicki has historically been the person to tend to Matthew’s medical issues, we find this to be a decisive factor in the instant dispute.
Finally, the trial court acknowledged giving great weight to Matthew’s stated preference to live with his father the remaining four years of his minority. Under the current jurisprudence from this circuit, a child’s preference to live with a particular parent is not by itself sufficient to justify a change in custody. Jones v. Jones, 46,315 (La.App. 2 Cir. 4/13/11), 63 So.3d 1074; Stroud v. Stroud, 43,003 (La.App. 2 Cir. 12/14/07), 973 So.2d 865; Lunsford v. Lunsford, 545 So.2d 1279 (La.App. 2 Cir.1989).
Although we agree with the trial court that Matthew has reached an age and level of maturity such that his preference can be seriously considered as one of the best interest factors under C.C. art. 134, at the same time, we also recognize that he has been put in a situation requiring him to choose which parent to hurt since he cares very much for both Vicki and Phillip. Matthew stated that he has spent the past 9 or 10 years in the custody of his mother, and now wanted to spend the remaining four years in the custody of his father. Whether this preference was possibly motivated by a sense of fairness to Phillip would be mere conjecture. We can see, as did the trial court, that Phillip’s rurally situated home on 11 acres with the attendant outdoor activities available, e.g. fishing, riding the dirt bike and four-wheeler, would be appealing to most teenage boys. Additionally, the security of having his established extended family connections nearby, a home environment that he is accustomed to on the one hand, but the same time the appeal of going to a new school and making new friends, all would | isbe very enticing to Matthew.
However, except for attending a different school, all of these benefits are currently available to Matthew and Phillip at substantially the same level under the current custody arrangement and visitation schedule. Matthew spends more than half of his free time at Phillip’s home now, including summers. On the other hand, with the modification decreed by the trial court, Matthew would be spending every other weekend with Vicki, half the holidays, and most of the summer vacation months at her home. We also observe that under the modified decree, Matthew would not be going to Sunday church services in Winnsboro any more frequently than under the current arrangement.
Finally, regarding Matthew’s recent poor performance in school work, Phillip is able to assert his influence on Matthew almost as easily under the current custody arrangement as he could if Matthew lived with him. Up to now, he has been unwilling to do so.
The trial court found that Vicki has provided an adequate and comfortable home for Matthew. While Phillip’s home circumstances perhaps provide a marginally more appealing environment for a teenage boy, these advantages are rendered less significant under the current custody arrangement. Matthew already spends much time at Phillip’s home, including every other weekend, holidays, and summer. *126 Phillip, to his credit, keeps frequent and regular contact with Matthew when he is with Vicki. Furthermore, the evidence relating to the other factors in Art. 134 in this record shows that Vicki and Phillip both have demonstrated a capacity and disposition to provide Matthew with love and affection and provide for | ^Matthew’s educational needs. As noted above, Vicki has taken care of Matthew’s medical issues during this time, as is appropriate for the domiciliary parent. However, we believe that Phillip should be more involved in both his medical care and education.
We therefore find that Phillip has not met his burden under Bergeron to warrant a change in the considered custody decree rendered December 9, 2004. For this reason, we conclude that the trial court abused its discretion in modifying the previous custody order and designating Phillip as the domiciliary parent.
By her second assignment, Vicki alleges that the trial court erred in terminating Phillip’s child support obligation and ordering her to pay child support. Because we find the trial court abused its discretion in modifying the previous custody decree, it was error for the court to terminate Phillip’s child support obligation and ordering her to pay child support.
For this reason, we reinstate the previous custody decree and reinstate Phillip’s child support obligation. However, because there has been a significant change in the income of both parents, and because Vicki requested an increase in child support in her original motion, we remand this case to the trial court to make the appropriate adjustments in Phillip’s child support obligation.
CONCLUSION
Phillip has not shown by clear and convincing evidence that the benefits of making him domiciliary parent outweigh the harm resulting from such modification. For these reasons, we conclude that the trial court abused its discretion in finding that Phillip has met the Bergeron standard of Improving that a change in the current custody arrangement is required and Matthew’s best interests require that Phillip be made the domiciliary parent. Therefore, we reverse the judgment of the trial court modifying the decree and terminating Phillip’s child support, and we reinstate the custody decree in effect since December 9, 2004, as well as Phillip’s child support obligation to Vicki. We also remand this case to the trial court to make the appropriate adjustments in Phillip’s child support obligation. All costs are to be paid by Phillip Ray Mulkey.
REVERSED; REMANDED WITH INSTRUCTIONS.

. Bergeron v. Bergeron, 492 So.2d 1193 (La. 1986).

. Watermeier v. Watermeier, 462 So.2d 1272 (La.App. 5 Cir.1985).

. A considered decree is an award of permanent custody in which the trial court receives evidence of parental fitness to exercise care, custody, and control of children, as opposed to a consent decree in which the parties agree to and stipulate to a custody plan approved by the court. Evans v. Lungrin, supra at 738.

. Even prior to Bergeron, courts required what they called the "heavy burden of *123 proof rule” or "double-burden" in considered-decree cases, that is, a showing that continuation of the present custody would be deleterious to the child. See, Languirand v. Languirand, 350 So.2d 973 (La.App. 2 Cir.1977)

. The Bergeron court stated:
There is evidence that more harm is done to children by custody litigation, custody changes, and interparental conflict, than by such factors as the custodial parent’s post divorce amours, remarriage, and residential changes, which more often precipitate custody battles under liberal custody modification rules than conduct that is obviously harmful to the child, such as abuse or serious neglect, which justifies intervention to protect the child under the court’s civil or juvenile jurisdiction. (Citations omitted).

. Todd, Matthew’s stepfather, testified that Matthew had already assumed that he was going to be moving to Phillip's house.