DUSTIN WRAY LEMOINE

VERSUS

JESSICA RACHEL BROWN LEMOINE


************

APPEAL FROM THE
SEVENTH JUDICIAL DISTRICT COURT
PARISH OF CONCORDIA, NO. 41,859 "B"
HONORABLE LEO BOOTHE, DISTRICT JUDGE

************

**MARC T. AMY
JUDGE**

************

Court composed of Jimmie C. Peters, Marc T. Amy, and Michael G. Sullivan, Judges.

**AFFIRMED.**

**PETERS, J., dissents and assigns written reasons.**


Brandy McClure
Smith, Taliaferro, Purvis & Boothe
Post Office Box 298
Jonesville, LA   71343
(318) 339-8526
COUNSEL FOR PLAINTIFF/APPELLANT:
     Dustin Wray Lemoine

J. Christopher Erny
1181 West Tunnel Boulevard, Suite A
Houma, LA   70360
(985) 580-4573
COUNSEL FOR DEFENDANT/APPELLEE:
     Jessica Rachel Brown

AMY, Judge.

The parties entered into a consent decree for the joint custody of their minor child. The decree named the mother as the domiciliary parent and set forth an equally-shared physical custody arrangement. Subsequently, the mother sought sole custody and a change in the physical custody schedule. Although the trial court maintained the parties' joint custody of the child, it modified the physical custody schedule to provide the father with physical custody every other weekend and shared custody during the holidays and summer vacation. The father appeals. For the following reasons, we affirm.

**Factual and Procedural Background**

Dustin and Jessica Lemoine were divorced in March 2007. The couple had one child, Trenton Lemoine, who was born in 2000. The divorce judgment provided the parties with joint custody of Trenton and designated Jessica as the domiciliary parent. In relevant part, the physical custody arrangement provided each parent with alternating weeks of physical custody and ordered each parent to provide for fifty percent of the child's expenses. While the trial court amended the joint custody decree in July 2007, it maintained the parties' alternate weekly physical custody schedule.

In late 2007, Jessica filed several motions to modify custody, alleging difficulties under the consent decree and seeking primary physical custody of Trenton. These modification requests did not proceed to trial.

Subsequently, Jessica filed a November 14, 2008 petition and again sought to be named sole custodial parent and to modify the physical custody schedule. She alleged that Dustin "continuously failed to provide a stable and safe home environment" while he had physical custody of Trenton. She also alleged that Dustin

failed to pay his share of expenses. On this latter charge, Jessica sought to have Dustin held in contempt of court. She listed several factual allegations which she contended, "would be extremely detrimental to the child[.]" Finally, she requested an order of child support. In his answer to the petition, Dustin filed a reconventional demand and asserted that Jessica was in contempt of court for a number of alleged violations of the custody decree.

Following a hearing on the physical custody and contempt issues, the trial court maintained the parties' joint custody of Trenton, but named Jessica the primary custodial parent. Dustin was provided with physical custody of Trenton on the second and fourth weekends of the month. The trial court also set forth a physical custody schedule for holidays and the summer. The trial court denied both parties' requests to hold the other parent in contempt. Proceedings related to the support award were deferred for the submission of additional evidence.

Dustin appeals, assigning the following as error:

1.    The trial court erred in its conclusion that there has been a material change of circumstances since the original custody decree.

2.    The trial court erred in its conclusion that modification of the original decree is in the "best interests" of the child.

### Discussion

A trial court's ruling in a child custody case is entitled to great weight and will not be disturbed on appeal absent a clear abuse of discretion. *Guidry v. Guidry*, 07-1272 (La.App. 3 Cir. 3/5/08), 979 So.2d 603. To the extent that its ruling is based on factual determinations, an appellate court reviews these findings for manifest error. *Rosell v. ESCO*, 549 So.2d 840 (La.1989).

2

The underlying custody judgment in this case was a consent decree. Modification of such a judgment requires that the party seeking a change prove that there has been a material change of circumstances since the custody decree was entered and that the proposed modification is in the best interest of the child. *Guidry*, 979 So.2d 603. In this case, the trial court found that Jessica established both of these elements.

*Material Change in Circumstances*

Dustin first questions the determination that Jessica proved a material change in circumstances since the entry of the original consent decree, which provided a shared physical custody arrangement.

In finding a material change in circumstances, the trial court explained as follows in reasons for ruling:

> (A)    Dustin's complete and utter refusal to contribute to the legitimate expenses of his minor child, Trenton, (as incurred by Jessica for and on behalf of Trenton) for a period of almost two (2) years as of the date of the hearing of the captioned matter. Dustin's "technical reasoning" that he had not been provided "copies of bills" nor "proof of payment" does not supersede his obligation to pursue an inquiry as to whether or not these were legitimate and necessary expenses for Trenton. This Court is convinced that the amount actually owed by Dustin to Jessica is at least the sum of $6,545.50 as of the date of the hearing of this matter. Even so, this Court (despite Dustin's assuring Jessica in a recorded telephone conversation that he would pay this debt while at the same time attempting to "negociate [sic]" his legal responsibility to do so by requiring Jessica to sign a "tax paper") in an effort to be certain, required in its Judgment for the present proceedings dated April 1, 2009, that Jessica actually provide to Dustin "copies of bills" or "proof of payment."
>
> (B)    Dustin's denial under oath that he was aware of specific "allergy problems" of Trenton. This Court is convinced that based upon the testimony of all parties to these proceedings[,] that the conclusion is inescapable that Dustin knew or should have known of Trenton's allergies and took no steps to alleviate them. Although there is conflicting testimony in the record as to

whether or not Dustin's parents allow their pet dog in the home during Trenton's visitation and whether or not Dustin's parents "smoke" in the home while Trenton is present, it is apparent to this Court that for whatever reason, Trenton's allergies have deteriorated upon Trenton's return to Jessica after visitation with Dustin or his parents.

It is noted by this Court that Jessica has taken steps to alleviate Trenton's allergy problems by the acquisition of a "hyper allergenic" [sic] pet dog (a Westie), whereas the pet dog of Dustin (a Labrador retriever) and the pet dog of his parents (a basset hound) are not "hyper allergenic"[sic].

(C)     Dustin's changes of employment between the time of the above-referenced Judgment and the date of this hearing and his refusal to provide to this Court in his testimony adequate "proof of income" despite repeated attempts to elicit same by Jessica's Counsel of Record.  In response to questioning by Counsel for Jessica regarding his failure to produce subpoenaed tax documents, his excuse was that he "couldn't find them".  It is very possible if not probable that Dustin's income has changed since the signing of the Judgment of this Court on March 15, 2007, but this Court is unable to ascertain from the evidence whether or not this is true and thereby make and [sic] informed decision relative thereto.  As stated hereinabove in this Court's "Findings of Fact", "no credible or verifiable evidence has been presented to this Court relative to the income of the respective parties from which this Court can make an informed decision relative to child support.  To the contrary, directly conflicting and unsubstantiated evidence relative thereto has been offered into the record." Therefore, in the interest of justice . . . this Court in its Judgment of April 1, 2009, ordered both Jessica and Dustin to provide to opposing Counsel copies of the 2008 Federal Income Tax Return of each and from which the liability for child support to be paid by Dustin would be calculated pursuant to the schedule as set forth in Louisiana Revised Statute[s] Title 9.

(D)     Dustin's combative and unresponsive attitude while testifying in these proceedings.

(E)     Dustin's . . . statements under oath that he neither knew of Jessica's proposed change of schools for Trenton nor did he ever consent to payment of any portion of the tuition costs thereof. This testimony is in direct contradiction to Dustin's own words pursuant to the recorded telephone conversation between Jessica and Dustin played at the trial hereof.  This Court also notes Dustin's direct testimony (when questioned by Counsel for Jessica) that Jessica "was lying" if she said there was ever a

4

conversation between Dustin and Jessica regarding Dustin's obligation to pay his pro rata portion of the tuition for Trenton. To the contrary, the taped telephone conversation revealed that it was Dustin who in fact was being untruthful in his testimony before this Court.  Further, this Court notes that Dustin's testimony from the stand was basically to the effect that he never "agreed or consented" to the transfer of Trenton from a public school in Vidalia, Louisiana to a private school in Natchez, Mississippi.   Pursuant to Louisiana Revised Statute[s] 9:335(B)(3) his "consent" was not required as Jessica, under the terms of the March 15, 2007, Judgment of this Court is the "domiciliary" parent and as such is vested with that sole authority:

Louisiana Revised Statute[s] 9:335(B)(3):
"The <u>domiciliary parent shall have authority to make all decisions</u> affecting the child unless an implementation order provides otherwise." []

(F)     For much of the period of time between the Judgment of March 15, 2007, referred to hereinabove and the trial of this matter, the "visitation" awarded to Dustin by this Court was exercised not by Dustin but by his parents.  In his defense, the necessity for this was his absence due to work but the fact remains that "intended visitation" for Dustin was in fact "actual visitation" for his parents and he took no steps to return Trenton to Jessica during this period of time or pursue avenues for "make-up visitation" for himself when he returned home.

(G)     Either Dustin's present and future employment prospects and income therefrom remain unknown to him and his mother (or uncertain at best) or he refused or was unable to be truthful with this Court during his testimony relative thereto.

(H)     Dustin's and his mother's testimony that they have never been aware of attempts by Jessica to provide them with a list of medical expenses by certified mail and by regular mail is very suspect at best and completely unbelievable at worst.  It is noted that Dustin's mother in her testimony verified the address on the certified letter to be her "home address" and attempted deliveries were made by the United States Postal Service on:
MARCH 6, 2008
MARCH 16, 2008
MARCH 27, 2008
Therefore, given the evidence presented to this Court on April 1, 2009, it is obvious that there has been a "material change in circumstances" regarding this case since the signing of the Judgment by this Court on March 15, 2007 . . . .

Dustin contends that although changes were observed by the trial court, they were not serious enough to materially affect Trenton's welfare.

Our review of the record supports the trial court's determination that a material change in circumstances occurred after the shared physical custody schedule was established by the consent decree. Notably, Jessica explained that, after Trenton returned from time with his father, he was troubled by allergies. She stated that "[w]hen he comes back to me he usually is congested, stuffed up, sneezing after he comes back from his father." This alleged condition, Jessica asserted, was due to cigarette smoking in the home of Dustin's parents, where Dustin exercised his periods of physical custody. She also alleged that Dustin's parents' dogs exacerbated the condition. Jessica explained Trenton requires both prescription and over-the-counter medication for his condition. While it is not questioned that Jessica knew that Dustin lived at his parents' home at the time the consent decree was entered into, the allergy problems manifested themselves after Trenton returned from his scheduled stays with his father. Although Dustin and his mother denied knowing that Trenton had allergies, the trial court permissibly accepted Jessica's testimony regarding Trenton's condition upon his return to her and her explanation that she takes Trenton to a doctor regularly for his condition.

Furthermore, given the trial court's determination that Trenton does, in fact, suffer from allergies, it is of no small moment that Dustin and his mother denied knowledge of any such condition, despite the fact that the child was in their home for as much time as he was with Jessica and despite Jessica's testimony that she made Dustin aware of the allergies, the doctor's visits, and the availability of prescribed medication.

6

Also, Jessica explained that, generally, the shared physical custody arrangement was not working and that she "believe[d] that [Trenton] needs to be in a more stable environment." She testified that:

> I do see him struggle. His attitude changes. He has told me that he doesn't like to go back there sometimes. I just want him where he, from week to week he knows where he's going to be at. He has his own space, his stuff and he needs more security.

Jessica also explained that she sometimes sees Trenton lacking self-confidence as a result of the arrangement.

Certainly, as accepted by the trial court, the lack of attention to Trenton's allergies and his changes in behavior, as testified to by Jessica, constitute a material change in circumstances. Accordingly, this assignment lacks merit.

We note, also, that Dustin cites four cases in support of his argument that the difficulties alleged by Jessica do not constitute material changes of circumstances. *See Weaver v. Weaver*, 01-1656 (La.App. 3 Cir. 5/29/02), 824 So.2d 438; *Long v. Dossett*, 98-1160 (La.App. 3 Cir. 4/28/99), 732 So.2d 773, *writ denied*, 99-1377 (La. 6/4/99), 745 So.2d 13; *Page v. Page*, 96-69 (La.App. 3 Cir. 5/8/96), 673 So.2d 1317. Dustin argues that the circumstances in the identified cases posed a more serious threat to the child's welfare than in this case. However, it is important to note that each of these cases involved an affirmation of the underlying trial court's determination to modify custody. Further, these cases specifically point out that a trial court "is given vast discretion in custody matters because the trial court has a better capacity than the appellate court to evaluate the testimony and credibility of witnesses." *Page*, 673 So.2d at 1319. In light of the courts' reliance on this standard of review in these cases, Dustin's assertion that these cases require a reversal in the present case is not persuasive.

7

*Best Interest of the Child*

Dustin next questions the trial court's determination that modification of the physical custody schedule would be in Trenton's best interest. He points to La.R.S. 9:335(A)(2)(b), which provides that "[t]o the extent feasible and in the best interest of the child, physical custody of the children should be shared equally."

With regard to the best interest of the child analysis, La.Civ.Code art. 134 provides the factors to be considered as follows:

> The court shall consider all relevant factors in determining the best interest of the child. Such factors may include:
>
> (1)     The love, affection, and other emotional ties between each party and the child.
>
> (2)     The capacity and disposition of each party to give the child love, affection, and spiritual guidance and to continue the education and rearing of the child.
>
> (3)     The capacity and disposition of each party to provide the child with food, clothing, medical care, and other material needs.
>
> (4)     The length of time the child has lived in a stable, adequate environment, and the desirability of maintaining continuity of that environment.
>
> (5)     The permanence, as a family unit, of the existing or proposed custodial home or homes.
>
> (6)     The moral fitness of each party, insofar as it affects the welfare of the child.
>
> (7)     The mental and physical health of each party.
>
> (8)     The home, school, and community history of the child.
>
> (9)     The reasonable preference of the child, if the court deems the child to be of sufficient age to express a preference.
>
> (10)   The willingness and ability of each party to facilitate and encourage a close and continuing relationship between the child and the other party.

(11) The distance between the respective residences of the parties.

(12) The responsibility for the care and rearing of the child previously exercised by each party.

In its reasons for ruling, the trial court considered each of the above factors and concluded that several of the factors revealed that a change from the shared physical custody was in Trenton's best interest. With regard to Article 134(3), the trial court explained that:

> [It] has a genuine and grave concern with regard to Dustin's ability and desire to fulfill the obligations imposed in Item #3 relative to his capacity and disposition to provide Trenton with "medical care" while in his custody (lack of treatment for "allergies") and "other material needs" (payment of expenses such as the cost of school tuition and medical expenses) while in Jessica's custody. This Court does believe that Trenton's basic needs are suitably met while Trenton is with Dustin (or with Dustin's parents) but Dustin's concern for Trenton's well-being apparently ceases to exist when Trenton is with Jessica as demonstrated by Dustin's refusal over a two (2) year period of time to assist in any manner whatsoever with expenses incurred by Jessica on behalf of Trenton (which expenses were required to be paid equally by Dustin and Jessica under the terms of the previous judgment rendered herein on March 15, 2007). This Court can find no evidence of any attempt by Dustin to make a legitimate effort to reimburse Jessica for one-half (½) of the expenses incurred for Trenton prior to the hearing in these proceedings pursuant to the Judgment of this Court dated March 15, 2007. This behavior is particularly troubling in that the above-referenced Judgment did not require Dustin to pay any child support and he has in fact chosen not even to assist in bearing his pro rata portion of the expenses of Trenton which he was required to do in said Judgment.

As was relevant to the material change of circumstances analysis, the trial court also found that factor four, as it relates to the stability of the environment provided by the parties, favored the change requested by Jessica. The court noted that the parties and their families had been unable to live in harmony under the shared custody arrangement and that Trenton must have "of necessity" sensed the conflict. The trial

9

court concluded that the "resultant upheaval in his life and constant change of domicile" was not in the child's best interest.

The trial court addressed factor six, the moral fitness factor, at some length, and considered Dustin's testimony regarding whether he agreed to a change of school for Trenton and whether he agreed to assume a portion of the school tuition. The court explained that, in a recorded telephone conversation on the subject, Dustin "completely contradicted his previous sworn [trial] testimony[.]" The trial court further described another aspect of Dustin's testimony as "'exaggerated if not completely untruthful[.]'"

Finally, the trial court again found in favor of Jessica under factor twelve, which focuses on "[t]he responsibility for the care and rearing of the child previously exercised by each party." La.Civ.Code art. 134(12). In this regard, the trial court noted that Dustin's responsibilities to the child "do not terminate" when he is with Jessica and that Dustin demonstrated an "absolute refusal to honor his financial obligations pursuant to the requirements" of the original custody decree.

Review of the record reveals support for the trial court's determination to modify the shared physical custody schedule and reveals no manifest error in the trial court's factual findings with regard to Trenton's best interest. As noted by the trial court, Dustin demonstrated a failure to satisfy his financial responsibilities to the child under the previous order as he failed to reimburse Jessica for medical care and a failure to acknowledge or demonstrate an appreciation of Trenton's allergies. Further, the record reveals no manifest error in the trial court's determinations regarding the contradictory nature of Dustin's testimony regarding the payment of

Trenton's school tuition and his statements made in a telephone conversation recorded by Jessica and transcribed into the record.

For these reasons, the trial court's factual findings were not manifestly erroneous, and its ultimate determination that modification of the physical custody schedule was appropriate was not an abuse of discretion. This assignment lacks merit.

### DECREE

For the foregoing reasons, the judgment of the trial court is affirmed. All costs of this proceeding are assigned to the appellant, Dustin Wray Lemoine.

**AFFIRMED.**

11

**DUSTIN WRAY LEMOINE**

**VERSUS**

**JESSICA RACHEL BROWN LEMOINE**

PETERS, J.

I respectfully disagree with the majority decision in this matter. The majority affirms based primarily on the trial court's conclusion that Dustin knew or should have known of Trenton's allergy condition and that he should have taken steps to accommodate and/or alleviate this condition. While there is mention of the allergy issue in Paragraph B of the trial court's reasons for judgment, the trial court's clear emphasis for change of circumstances was Dustin's failure to meet his financial obligations and his performance at trial. Had the financial obligation issue been pled as a change of circumstances rather than as a separate cause of action, I would have no trouble joining the majority in affirming the trial court judgment. However, absent the pleading of the support issue as a change of circumstances, I find that the trial court erred in considering this separate cause of action as authority for its finding of a change of circumstances. To allow Jessica to benefit from this consideration would promote trial by ambush.[1] Additionally, I conclude that Jessica failed to establish a change of circumstances, even as to the allergy condition.

The parties were married on February 26, 2000, separated for the final time on March 20, 2006, and divorced on March 15, 2007. At the time of the divorce,

---

[1]This is not the normal situation where the pleadings were expanded by the introduction of evidence on this point without objection. Dustin was obligated to face the support issue because it had been plead as a separate cause of action.

Trenton was one month short of his seventh birthday. The custody issue was addressed in both the divorce judgment and a second judgment dated July 17, 2007.[2] The custody arrangement consented to was short lived. As pointed out by the majority, before the end of 2007, Jessica had filed three separate pleadings seeking to be named Trenton's primary custodial parent, none of which alleged any specific changes of circumstances. Although trial dates were set on all three pleadings, none went to trial.[3] Finally, on November 14, 2008, Jessica filed a petition asserting specific instances of change of circumstances:

    a)    [Trenton] is forced to stay with his paternal grandparents for the majority of the time he is suppose to be exercising visitation with [Dustin];

    b)    [Trenton] has severe allergies yet he is constantly subjected to second hand smoke, animal hair, and pet dander while with [Dustin] and his family;

    c)    At the end of each visitation with [Dustin], [Jessica] has to bring [Trenton] to the doctor for treatment for allergies;

    d)    [Trenton] has been subjected to illegal behavior of [Dustin] and the paternal grandfather while hunting in Mississippi. Further, the child was instructed not to tell anyone;

    e)    Upon information and belief, the paternal grandfather has recently been arrested and charged for a felony theft and was dismissed from his job;

    f)    [Dustin] and/or the paternal grandparents refuse to talk to [Jessica] while [Trenton] is with them;

    g)    [Dustin] fails to pick up [Trenton] from school and fails to send lunch money with [Trenton];

    h)    [Trenton] has missed eleven (11) days of school unexcused while in the custody of [Dustin].

---

[2]The record does not explain the need for the second judgment despite the finality of the first. However, the second judgment did not change anything with regard to the custody issues before us.

[3]The record does not contain any minutes associated with these proceedings.

As a completely separate cause of action, Jessica asserted that Dustin was in arrears for over $5,179.00 relating to his child support obligation.[4]

In considering these assertions of change of circumstances, I note that the trial court addressed only the second and third relating to Trenton's allergy condition. Silence on the remaining assertions is a rejection of those assertions. *M. J. Farms, Ltd. v. Exxon Mobil Company*, 07-2371 (La. 7/1/08), 998 So.2d 16. I find no error in the rejection of those assertions. With regard to Dustin's work schedule and parental assistance in caring for Trenton, Jessica was well aware of that situation when they divorced. Furthermore, by the time of trial, Dustin was no longer working offshore and this issue had resolved itself. The assertions that Dustin's father had committed an illegal act in the presence of Trenton while hunting in Mississippi and that he had been arrested and charged with a felony are not supported by any evidence in the record, nor is the allegation that the parental grandparents refuse to talk to Jessica while Trenton is with them, or that Trenton missed eleven unexcused days from school while in Dustin's custody. Finally, while it is disputed whether Dustin fails to send school lunch money with Trenton while the child is in his custody, that in itself does not arise to a material change of circumstances. Just as a parent's failure to receive visitation privileges does not justify a failure to pay child support, a parent's failure to support his child does not justify a change of custody. *See Crooks v. Crooks*, 425 So.2d 385 (La.App. 3 Cir. 1982), *Macaluso v. Macaluso*, 509 So.2d 201 (La.App. 1 Cir. 1987), and *Borden v. Borden*, 550 So.2d 901 (La.App. 2 Cir. 1989).

---

[4]Jessica did not request an arrearage judgment. Instead, she sought to have Dustin held in contempt of court.

3

The allergy issue is based almost exclusively on Jessica's self-serving testimony. The record contains no medical evidence to support her allegations, and the only evidence of medical expenses is a lump sum figure of $444.00 in a letter from her to Dustin dated January 28, 2009. There is nothing in the letter to suggest whether this amount is entirely for allergy treatment or includes costs of other medical treatments. In any event, this amounts to less than $30.00 per month which would seem much less than one would expect for by-weekly visits to a specialist. Furthermore, Trenton's allergy condition, to whatever extent it may exist, was present in 2007, and before. Therefore, it cannot be used as a basis for a change of circumstances. *See Cooley v. Cooley*, 94-251 (La.App. 3 Cir. 10/5/94), 643 So.2d 408.

In its reasons for judgment, the trial court expounded on the allegations of Jessica's petition in reaching its conclusion by pointing out the obvious inconsistent statements and blatant falsehoods in Dustin's testimony. While Dustin's performance at trial, as described by the trial court, is unacceptable and inexcusable, it related to the separate support issue and not to the change of circumstances issue. His foolish actions do not relieve Jessica of meeting her burden of proving the change of circumstances *she has alleged*, nor do they expand the pleadings. Dustin's fault is in disobeying the support provisions of the July 17, 2007 judgment and in not acknowledging his disobedience in his sworn testimony. However, that fault addresses a separate cause of action before the court and, as our supreme court has recognized, "[a]n award of custody is not a tool to regulate human behavior." *Everett v. Everett*, 433 So.2d 705, 708 (La.1983).

4

Because I find that Jennifer failed to establish a material change of circumstances since rendition of the July 17, 2007 consent judgment, I would reverse the trial court judgment.