PICKETT, Judge.
liThe appellant, Jerianne McPherson Schneider (Jerianne), appeals the judgment of the trial court awarding joint custody of Jon Louis Schneider to her and his father, David Schneider (David), on the condition that she relocate to Texas, and setting other conditions.

PROCEDURAL HISTORY

Jon Louis was born on April 12, 2006, in Alexandria, Louisiana, the issue of the brief marriage of Jerianne and David. On April 18, 2006, Jerianne filed a petition for divorce in Rapides Parish, where she was residing with her parents. In the petition for divorce, Jerianne asked that the court award joint custody of Jon Louis and name her as domiciliary parent. At the same time, David filed for divorce in Texas, where the couple had lived during their on-again off-again relationship that culminated in marriage on February 3, 2006, after discovering Jerianne was pregnant with David’s son.
David originally challenged the jurisdiction of the Louisiana court to litigate the custody claim under the Uniform Child Custody Jurisdiction Act, La.R.S. 13:1700-1724 (now repealed and replaced with the Uniform Child Custody Jurisdiction and Enforcement Act, La.R.S. 17:1801-1842). The trial court denied his peremptory exception of lack of subject matter jurisdiction or, in the alternative, dilatory exception of inconvenient forum. This court denied David’s application for supervisory writs in an unpublished writ disposition. Schneider v. Schneider, 06-1433 (La.App. 3 Cir. 12/19/06).
The trial court signed a judgment of divorce on January 29, 2007. David filed a rule for interim visitation on February 9, 2007. The court entered an interim order allowing David to have visitation with Jon Louis every other weekend in Alexandria *1281 for eight hours on Saturday and four hours on Sunday. Following a 12recommendation of Dr. John Simoneaux, the court-appointed custody evaluator, that David should not have overnight visitation until Jon Louis was three or four years old, this arrangement remained unchanged until November 2009.
The trial court set a hearing on the issue of overnight visitation for Monday, December 21, 2009. David exercised his visitation with Jon Louis on December 19 and 20. On the evening of December 20, Jon Louis made a statement to his aunt, Jeni McPherson, alleging that David Schneider had sexually abused him. Jerianne consulted with her attorney, who recommended that she notify Child Protection Services. The December 21, 2009 hearing was continued, and the court was informed of the allegations by early January 2010. At some point, the trial court recommended that Jon Louis should see a trained therapist. Jon Louis began seeing Mary Girard, a licensed social worker, on December 28, 2009. This relationship became critical to the future trajectory of this litigation.
At a January 4, 2010 hearing, the court ordered that David be granted supervised visitation with Jon Louis on alternating weekends to be supervised at all times by David’s parents. Jon Louis made another allegation that his father sexually abused him on February 17, 2010. On a motion by Jerianne, the trial court suspended David’s visitation with Jon Louis on February 24, 2010. The trial court ordered the parties to be re-evaluated by Dr. Simo-neaux. A hearing on the rule for visitation was set for April 21, 2010, which was continued to August 8, 2010. Dr. Simoneaux presented his new recommendation to the court in June 2010, wherein he suggested gradually increasing visitation with David “fairly quickly.” In his report, Dr. Simo-neaux stated that he did not believe that David sexually abused Jon Louis. Ms. Girard, however, disagreed and asked Dr. Simoneaux to reconsider his findings in a meeting on July 14, 2010. Dr. Simoneaux refused. On July 21, 2010, Jerianne filed a motion to remove Dr. |sSimoneaux, alleging he was biased against her because her uncle, state Senator Joe McPherson, blocked his appointment to the Louisiana State Board of Examiners of Psychologists. On August 4, 2010, Jerianne filed a motion for an independent custody evaluation. The hearings on these various motions were originally set for September 7, 2010, with the trial on the rule for visitation set for November 17. At David’s request, the hearing and the trial were continued without date, and a status conference was held on November 17.
As a result of this status conference, a consent judgment was issued ordering Dr. Jonathan Haag be appointed to recommend an interim visitation plan to the court; ordering Dr. Alicia Pellegrin be appointed to replace Dr. Simoneaux and perform a custody evaluation; and setting a hearing for January 28, 2011 to set interim visitation pending a full custody trial. After the January hearing (which was reset for January 81), the trial court appointed Dr. Kathryn Kuehnle as an independent custody evaluator on February 22, 2011. In this same order, the trial court granted David supervised visitation at the Whistle Stop in Lake Charles every other Saturday. At the request of Dr. Kuehnle, the parties were later ordered to undergo psychosexual evaluations with Dr. Hugh Kirkpatrick.
On May 20, 2011, David filed an “Expedited Rule to Modify Physical Custody Schedule and Regime to Sole Custody, for Contempt and Compensatory Time Rights per LSA-R.S. 9:436 and/or C.C. Article 136.1, for Attorney Fees, Motion to Com *1282 pel Execution of Medical Releases, and Promised Productions, Rule to Modify Custody Evaluation Order.” In this pleading, David requested increased visitation with Jon Louis based on Dr. Haag’s report. In his report, Dr. Haag concluded that David was not a danger to his son and that unsupervised overnight visitation could begin almost immediately. He also suggested that after a couple of local visits, Jon Louis could travel to Texas to visit his father. A hearing |4 on this rule was originally set for June 14, 2011, but was apparently continued. Sometime thereafter, Jon Louis began overnight visitation in Kingwood, Texas, with David, though there is no court order or evidence of agreement of the parties in the record.
On July 27, 2011, Ms. Girard filed a motion to have her company, Life Solutions, Inc., appointed as Jon Louis’s court-appointed counselor. The motion was originally set for hearing on August 15, 2011, but was later continued to September 26, 2011. In response to Ms. Girard’s motion, David filed a peremptory exception of no right of action or no cause of action and a dilatory exception of unauthorized use of summary proceedings.
On September 21, 2011, Jerianne filed a “Petition for Protection from Abuse” against David. She alleged that Jon Louis told her on the way home from visiting his father in Texas that David had sexually abused him again. She reported the allegations to authorities in both Louisiana and Texas. At a September 27, 2011 hearing, the court continued the hearing on the temporary restraining order included in this petition to October 21, 2011, and in the interim, ordered that David’s unsupervised visitation continue. The court also ordered the parties to participate in mediation before February 16, 2012, and set a pre-trial conference for February 17, 2012. After Jerianne failed to deliver Jon Louis to Texas for David’s next scheduled visitation, David filed an amended rule for contempt against Jerianne on October 3, 2011. On November 3, 2011, the Petition for Protection from Abuse was dismissed without prejudice on Jerianne’s motion. On November 10, 2011, Jerianne reported to authorities that Jon Louis had made a fourth allegation of abuse.
In December, the mediator informed the court that no agreement had been reached. The trial began on March 13, 2012, and, after eighteen days of testimony, | ¡Including the testimony of nine mental health experts and numerous fact witnesses, concluded on April 30, 2012. The trial court entered an oral judgment on the record on May 25, 2012, for an “interim period from one year from the date of the judgment.” He found that David did not sexually abuse his son and was not a threat to Jon Louis and that David had not sexually abused Jerianne. He awarded joint custody to David and Jerianne in alternating four-day increments on the condition that Jerianne move to Kingwood, Texas, with David as the domiciliary parent. He appointed a parenting coordinator to facilitate decision-making between the parties and to report directly to the trial court. If Jerianne did not agree to move to Kingwood, Texas, he ordered that David be awarded sole custody. Jerianne would be allowed visitation, but he ordered that it be exercised within one hundred miles of Kingwood, Texas. The trial court also ordered that David, Jerianne, and Jon Louis receive psychotherapy from a therapist recommended by the parenting coordinator. David and Jerianne were also ordered to undergo an alcohol/substance abuse evaluation. The trial court scheduled status reviews of the case on November 30, 2012, and June 1, 2013. The judgment was very detailed about the means and timing of transfers, holiday visitation, phone communications, and the means of *1283 decision making and resolving disputes. This judgment spans nine pages in the record. Jerianne has appealed this judgment.

ASSIGNMENTS OF ERROR

In her appeal, Jerianne asserts the following errors of the trial court:
1. The trial court erred when it failed to apply the Post Separation Family Violence Relief Act.
2. The trial court erred when it failed to properly apply the Civil Code Article 184 [factors] and to name Jerianne domiciliary parent and award David custodial periods on alternating weekends with summer visitation.
8. The trial court erred when it failed to apply an adverse presumption regarding the testimony of the “collater-als” listed on David’s Will Call | fiWitness List but not called at trial and who were never subjected to cross examination under oath.
4. After a six-week trial, the trial court erred in rendering a judgment purporting to be an interim order that contained the following impermissible provisions:
a. A requirement that Jerianne move to Kingwood, Texas within ninety days of the date [ ] of the judgment in order to enjoy shared custody of J.L.S. to allegedly help him ‘bond’ to David even though there was no request made by David for relocation and the provisions of Louisiana Revised Statute 9:355.1, et seq. were •not followed and in spite of the fact Louisiana courts have consistently held that “an award of custody is not a tool to regulate human behavior.” Cleeton v. Cleeton, 383 So.2d 1231 (La.1980).
b. The appointment of a parenting coordinator in violation of Louisiana Revised Statutes 9:363(A) and 9:358.2 as a history of family violence perpetrated by David was proven at trial.
c. Authority for the parenting coordinator far in excess of that allowed by Louisiana Revised Statute 9:358.1, et seq., and a provision requiring ex parte communication between the parenting coordinator and the trial judge in direct violation of 9:358.1.
d. A requirement that both parties attend psychotherapy sessions with therapists recommended by the parenting coordinator in violation of the Supreme Court’s decision in Griffith v. Latiolais, 10-754 (La.10/19/10), 48 So.3d 1058, 1071.
e. A requirement that the parties stipulate in status reviews (aka “review hearings”) in direct violation of this Court’s ruling Brown v. Brown, 05-1346 (La.App. 3 Cir. 3/1/06), 925 So.2d 662, 666.
f. A requirement that the parties exercise their periods of physical custody with J.L.S. within a 100 mile radius of Kingwood, Texas in violation of the United States Constitution Article IV, section 2. Bray v. Alexandria Women’s Health Clinic, 506 U.S. 263, 276-77, 113 S.Ct. 753, 763, 122 L.Ed.2d 34, 51.
g. A provision making non-major decisions subject to judicial review.

DISCUSSION

Louisiana Civil Code Article 131 provides that “[i]n a proceeding for divorce or thereafter, the court shall award custody of a child in accordance with the best interest of the child.” Article 131 applies in actions to change custody as well as in those to initially set it. AEB *1284 v. JBE, 99-2668, p. 7 (La.11/30/99), 752 So.2d 756, 761; La.Civ.Code art. 131, comment (d). The determination of the trial court in child custody matters is entitled to great weight, and its discretion will not be disturbed on review in the absence of a clear showing of abuse. Bergeron [v. Bergeron,] 492 So.2d [1193,] 1196 [La.1986].
Gray v. Gray, 11-548, pp. 19-20 (La.7/1/11), 65 So.3d 1247, 1258-59.
We find that the trial court abused its discretion in requiring Jerianne to move to Texas or lose custody of her son. “An award of custody is not a tool to regulate human behavior. The only object is the best interest of the child.” Everett v. Everett, 433 So.2d 705, 708 (La.1983). We further find that the. alternative given to Jerianne, which allowed her to visit her son only within one hundred miles of King-wood, Texas, was overly restrictive and an abuse of discretion. The effect of the trial court’s custody plan was to prohibit Jon Louis from being in Pineville and continuing relationships with his maternal family. Further, we find no support in the law for the trial court’s order that Jerianne and David seek psychological counseling with a therapist chosen by the parenting coordinator appointed by the court, which is beyond the scope of the duties of a parenting coordinator. La.R.S. 9:358.4. The trial court erred in requiring the parenting coordinator to report directly to the court, in violation of La.R.S. 9:358.5. We find no legal support for the trial court’s issuance of an “interim” judgment following a full custody trial. Interim judgments are intended as temporary orders pending a full custody hearing. The trial court also erred by scheduling of status hearings for the first year following issuance of the judgment. See Brown v. Brown, 05-1346, p. 5 (La.App.3 Cir. 3/1/06), 925 So.2d 662, 666 (“review hearings are held in juvenile cases as set forth in La.Ch.Code art. 1454, not in civil custody cases.”).
We find that these multiple legal errors and the trial court’s abuse of discretion in crafting his creative judgment require us to conduct a de novo review of the record in this case. We note at the outset that this case is not unlike many other contentious custody cases that courts are called upon to decide, with parties who dislike one another, involvement from collateral family members, allegations of neglect and abuse, and the inability of the parties to come to agreement on any substantive issue. The aspect of this case that is somewhat different is the amount of money expended by the parties, with the approval of the trial court, on psychological experts and their reports to the trial court, and even an expert to testify about the methods and conclusions of the other psychologists.
The parties’ intense dislike of one another has clearly resulted in a situation where they are inclined to believe any negative information that is brought forth about the other. Jon Louis has made statements about each parent to the other which we now know, with all the information before us, were not true. Dr. Stahl, a psychologist who was called to testify about the work product, methods, and conclusions of Drs. Kuehnle and Pellegrin, summed it up when he stated, “I don’t question that at some point in time this child’s life, because of what I perceive to be bilateral negative attributions by both parents against the other, founded or not, that this is a child who is at risk of confabulation, confusion, and negative stereotyping.” Put another way, Jon Louis knew his parents did not like each other and made up stories about his father to tell his mother, and vice versa. The essential question before us is whether Jerianne acted appropriately when Jon Louis told her, on four different *1285 occasions, that David had sexually abused him.
|9The first allegation came in December 2009, just before the trial court was set to rule on whether David would be allowed overnight visitation with Jon Louis. The evening after he saw his father, Jerianne’s sister, Jeni McPherson, asked Jon Louis, who was three years old at the time, why he was rubbing his crotch. Jon Louis reported that his “pena” hurt because his father was “pulling on it too hard.” Jer-ianne reported his statement to her attorney, who told her to report it to OCS. Jerianne also took Jon Louis to his pediatrician, where Jon Louis repeated the allegation to the nurse practitioner. When made aware of the allegation, the trial court suggested that the child might need to see a therapist and recommended the office of Ms. Girard. Jon Louis began treating with Ms. Girard within a week of the first allegation. Ms. Girard’s records reflect thirty sessions with Jon Louis between December 28, 2009 and March 7, 2011. Ms. Girard kept no recordings or contemporaneous notes of these sessions. While OCS could not validate the report of abuse, Ms. Girard was certain that Jon Louis had been abused and advised Jer-ianne of this. Ms. Girard also began writing ex parte letters to the trial judge urging him not to allow David to have unsupervised visitation with Jon Louis.
When Jon Louis made the second allegation against his father in February 2010, the trial court suspended all visitation with David. By this time, the trial court had asked Dr. Simoneaux to perform a second custody evaluation. When Dr. Simoneaux issued his report in June, he opined that David had not sexually abused Jon Louis and recommended that visitation begin again. Ms. Girard disagreed with this conclusion, and in a meeting with Dr. Simo-neaux and the parties’ attorneys, she asked Dr. Simoneaux to change his report. Soon after Dr. Simoneaux indicated he would not change his report, Jerianne asked that Dr. Simoneaux be removed from the case. The trial court did not appoint new experts to conduct custody evaluations until November 17, when Dr. Haag was appointed to conduct 110an evaluation for interim custody, and Dr. Pelleg-rin was appointed for a permanent custody evaluation. As a result, David’s contact with Jon Louis was limited to a brief one hour visit near Christmas 2010.
In this litigation, David has pointed to his limited contact with Jon Louis during this period as an indication of Jer-ianne’s unwillingness to foster a relationship between Jon Louis and his father. From Jerianne’s perspective, she had two reports from her son alleging inappropriate contact by David. She cited incidents of violence from during their relationship that made her believe that David was capable of this behavior. Ms. Girard was treating Jon Louis and was convinced that David had abused him. While Dr. Simo-neaux had disagreed with Ms. Girard’s conclusion about the abuse, Jerianne alleged that Dr. Simoneaux harbored ill will against her family for political reasons. Although OCS had invalidated both allegations of abuse, Ms. Girard told Jerianne that OCS was not competent. Faced with this evidence, Jerianne continued to believe that David had molested Jon Louis. Furthermore, there was a court order in place suspending David’s visitation with his son. We find that it was clearly an abuse of discretion for the trial court, relying on expert opinions sought and received long after the initial allegations were made, to find that Jeriarine’s actions over this time period amounted to an attempt to alienate Jon Louis from David. Further, Dr. Kuehnle, Dr. Pellegrin, and Dr. Haag all agreed that Jon Louis had not been *1286 alienated from his father. There is no evidence that Jerianne made any negative remarks about David in Jon Louis’s presence, even though she was concerned about David potentially abusing Jon Louis during visitation.
This court has reviewed the record in its entirety. This includes eighteen days of testimony from expert and fact witnesses, reports from the psychologists]^who evaluated the parties, medical records of the parties, and video and audio recording of evaluations, transfers of custody, and conversations with Jon Louis.
We find that the evidence does not support a finding that the Post-Separation Family Violence Relief Act, La.R.S. 9:361-66, applies in this case. While Jerianne made allegations that David sexually and physically abused her, in all cases those allegations were made well after the fact in the course of this litigation. David denies that he abused her sexually or physically. We find these allegations were not proven by a preponderance of the evidence.
The law is clear that in determining who shall be granted custody of a minor child, the court must primarily consider the best interest of the child. La. Civ.Code art. 131. Louisiana Civil Code article 134 sets forth the following factors to be considered in determining a child’s best interest in a custody proceeding:
The court shall consider all relevant factors in determining the best interest of the child. Such factors may include:
(1) The love, affection, and other emotional ties between each party and the child.
(2) The capacity and disposition of each party to give the child love, affection, and spiritual guidance and to continue the education and rearing of the child.
(8) The capacity and disposition of each party to provide the child with food, clothing, medical care, and other material needs.
(4) The length of time the child has lived in a stable, adequate environment, and the desirability of maintaining continuity of that environment.
(5) The permanence, as a family unit, of the existing or proposed custodial home or homes.
(6) The moral fitness of each party, insofar as it affects the welfare of the child.
(7) The mental and physical health of each party.
(8) The home, school, and community history of the child.
11⅞(9) The reasonable preference of the child, if the court deems the child to be of sufficient age to express a preference.
(10) The willingness and ability of each party to facilitate and encourage a close and continuing relationship between the child and the other party.
(11) The distance between the respective residences of the parties.
(12) The responsibility for the care and rearing of the child previously exercised by each party.
In this case, the trial court focused on factors four and ten exclusively. He found that the atmosphere in which Jerianne had raised Jon Louis was poisonous to his relationship with his father, and therefore it was in Jon Louis’s best interest that his environment change dramatically. He also found that Jerianne did a poor job of facilitating the relationship between David and Jon Louis. We find that the narrow focus on these two factors, to the exclusion of all others, was an abuse of the trial court’s discretion. Further, we find that the evidence shows that Jerianne provided a lov- *1287 mg, stable environment for Jon Louis, and the drastic changes required in the trial court’s custody order were not supported by the record. We now turn to a discussion of each of the twelve factors.

(1) Love, affection, and other emotional ties

The psychologists uniformly testified that Jon Louis loves both his mother and his father. The evidence also shows that Jerianne has raised a loving, caring son who loves her in return. David has consistently tried to be a part of his son’s life, even in difficult situations, and has shown the capacity and desire to integrate Jon Louis into his new family, with his wife and their two children. Jon Louis has lived every moment of his life with his mother in their home in Pineville. The experts testified that removing Jon Louis from the only home he has ever known 11swould be harmful to him. The emotional ties to his mother, her extended family, his friends, his school, and his church in Pine-ville are a strong consideration.

(2) Capacity to love, provide spiritual guidance, and to continue education

Both David and Jerianne are capable of providing for Jon Louis’s emotional and educational needs. Jerianne did testify that she attends church regularly with Jon Louis, and David and Shelly testified that they go to church less frequently. Both parties have shown a keen interest in providing the help necessary to overcome the educational obstacles Jon Louis has faced, particularly his speech issues. As with nearly every other aspect of this case, David and Jerianne disagreed about the best way to help Jon Louis. The only barrier to each party’s capacity to continue to help Jon Louis as he grows up is their behavior toward one another. Taken as a whole, this factor favors neither David nor Jerianne.

(3)Capacity to provide food, clothing, medical care

Jerianne and David both have stable job histories and housing situations. Jerianne argues that while she owns her own home, David lives in a home owned by his wife Shelly. We are not persuaded that this is a relevant distinction. Jerianne has always provided for Jon Louis’s physical health, and there is no indication in the record that David would be any less vigilant in caring for him. The evidence with respect to David’s care of his younger children supports this conclusion.
We note that Jon Louis’s medical condition of ptosis (a drooping eyelid) has provided yet another opportunity for David and Jerianne to disagree. David suggested that Jerianne takes Jon Louis to his pediatrician too often and suffers from “Munchausen syndrome by proxy.” There is no evidence in the record to support this allegation. Jerianne has not always communicated as effectively about | 14Jon Louis’s medical conditions and appointments as David would like. These issues, however, bear on the capacity of Jerianne and David to get along with each other, not their capacity to take care of Jon Louis. We find that this factor favors neither David nor Jerianne.

(U) Stability and adequacy of environment and desirability of maintaining

The trial court found this factor to be determinative in this case. It determined that Jerianne provided a home wherein Jon Louis was bombarded by negative feelings about his father. The evidence at trial does not support this conclusion. There is certainly evidence that Jerianne believed David to be abusive based on the statements made by Jon Louis. David also made allegations of abuse against Jer-ianne by alleging that she suffers from *1288 “Munchausen syndrome by proxy because she took Jon Louis to the doctor too often. His testimony at the hearing reflects that he continues to hold this belief. He made other negative statements to Dr. Simo-neaux and Dr. Kuehnle regarding Jer-ianne’s mental stability.
The experts uniformly testified that removing Jon Louis from Jerianne’s custody would be harmful. Dr. Kuehnle and Dr. Pellegrin believed that the harm caused by Jerianne’s negative feelings about David, as transmitted either intentionally or unintentionally to Jon Louis, outweighed the harm of relocation. The evidence does not support this conclusion.
A thorough review of the record fails to reflect that any of the negative statements by the parties against each other were made in the presence of Jon Louis. Dr. Kuehnle, in fact, noted that Jon Louis was very open and loving towards David and his stepmother. He would spontaneously show acts of affection towards them. She opined that this would not be the case if he were not being raised in a stable, loving home. She noted that Jon Louis is not afraid of his father 11Band is not alienated from him, another factor which reflects upon the environment in which he was being raised in Jerianne’s home. Further, the evidence shows that Jon Louis has done well in school, is active in church, has friends in his neighborhood, and takes part in activities in the community.

(5) Permanence of the existing or proposed homes

For the first five years of his life, Jer-ianne raised Jon Louis as a single mother with the help of her nearby parents and siblings. Since divorcing Jerianne, David’ has remarried and has two children with his new wife. This element favors neither party.

(6) Moral fitness

The evidence showed that both Jer-ianne and David have at times abused alcohol. Jerianne makes poor decisions when she gets drunk. For example, she was drunk when she met David for the first time and insisted on following him home in her own car. David has impulse control issues when he drinks that have resulted in violent outbursts towards Jer-ianne and others. When Dr. Kuehnle evaluated David and Jerianne in the summer of 2011, they both showed evidence of consumption of large quantities of alcohol. David blamed it on a Fourth of July barbecue the weekend before; Jerianne said she drank because of the anxiety of the court proceedings. Their abuse of alcohol does not reflect well on their moral fitness.
David and Jerianne also show questionable moral fitness in their pattern of disdain towards one another and their inability to put aside their differences for the sake of Jon Louis. The record does include some hopeful evidence that David and Jerianne are beginning to realize the harm their attitudes have had on Jon Louis. We find that this element favors neither party.
■ | lñ(7) Mental and physical health of the parties
The physical health of either Jerianne or David is not an issue in this case. David has made allegations that Jerianne is “crazy.” Jerianne is under the care of a psychologist and takes medications for anxiety and depression, which she claims is directly related to this litigation. She is in treatment, and the evidence does not show that she is incapable of caring for Jon Louis. The evidence shows that Jerianne has, in fact, taken very good care of Jon Louis.
*1289 Jerianne made allegations that David is an “intimate terrorist.” The evidence supports a finding that David has anger control issues. Although there is conflicting evidence regarding many of the allegations, there is irrefutable evidence that David was fired from a job because of a fistic encounter with a co-employee. He chased a teenager who took a political sign from his yard and tackled him, breaking the teenager’s nose. He struck a police officer who came to his house to serve a warrant, and this resulted in his arrest for the battery of that officer. In addition, his first wife, from whom he was separated when he met Jerianne, was granted a permanent injunction against David because of his abusive behavior towards her. The record establishes that on one occasion he actually locked his first wife in their house, disconnected the phone lines, cancelled her cell phone service, and took her vehicle. She had to climb out of a window to call for assistance. The evidence supports a finding that David, at a minimum, belittled Jerianne and attempted to control her. We are hopeful that he has matured. David’s current wife testified that he does not currently exhibit the same behaviors.
This court has concerns about both parties in regards to their past behavior. Neither party, however, has exhibited this behavior in the presence of the minor child.
117(¾) Home, school, and community history of the child
We have already touched on several of these factors. Jon Louis lived with Jer-ianne in Pineville from the time he was born until the judgment in this case was issued. Jerianne provided a stable home environment. Jon Louis had the benefit of a large extended family that lived nearby, including his grandparents. Jon Louis performed well in school. When he had difficulty reading or with speech, Jerianne sought extra instruction for him. Dr. Kuehnle stated in her report that Jon Louis was a “happy, playful, and cooperative child.” Dr. Kuehnle testified that Jon Louis is “very nurturing and very loving” and attributed those qualities to the parenting of his mother.
Jon Louis has friends and his extended family in Pineville. He did well in school, both academically and socially. Because of his mother, he was active in church activities. We find that Jon Louis’s home, school, and community history supports continued domiciliary custody with Jer-ianne.

(9) The reasonable preference of the child

This element is not applicable in this case, as Jon Louis is not old enough to express a preference.

(10) Willingness to foster a relationship between the child and the other parent

The trial court found this factor greatly favored David. It based this finding on the “hypothesis” of Dr. Kuehnle and Dr. Pellegrin that Jerianne and her family negatively stereotyped David. The trial court also gave weight to the long stretch of time when Jerianne did not allow David to see Jon Louis. As we have previously discussed, some of those prolonged periods that David did not have visitation -with Jon Louis were the result of a court order suspending David’s visitation.
|1sWe refuse to find fault with Jerianne for reporting Jon Louis’s allegations of abuse or acting to protect Jon Louis from what she believed was abuse at the hands of David based on the information she had before her at the time. Nevertheless, the history of visitation, even before the allegations of abuse, supports a finding-That Jerianne did not make much of an effort to *1290 facilitate a relationship between her son and his father. Time and again David was forced to seek intervention from the court to have any increase in visitation as his son grew older. The evidence also shows that Jerianne disobeyed court orders on at least two occasions and failed to facilitate David’s court-ordered visitation. The evidence adduced at trial shows that Jer-ianne’s feelings about David may be changing. But as Dr. Simoneaux remarked, the important measure of cooperation in these cases is not feelings, rather it is actions and behaviors.
David has no history of an opportunity to facilitate the relationship between Jon Louis and his mother.

(11) Distance between the residences of the parents

Since leaving Texas and divorcing David, Jerianne has lived in Pineville. David continues to live in Kingwood, Texas. We have already concluded that the trial court’s solution to this problem, requiring Jerianne to move to Texas, is beyond his authority. Any custody arrangement will have to take into account this distance.

(12) Responsibility previously exercised by the parties in the care of the child

Until he was six years old, Jerianne had custody of Jon Louis. As previously discussed, she took care of all of his needs appropriately. Jon Louis is a healthy, loving, well-adjusted boy. This factor favors Jerianne.

|1flCONCLUSION

After a thorough review of the record, we conclude that, in spite of the contentious nature of these proceeding, Jon Louis was being raised in a stable home environment with strong ties to community, school, and church. He has strong emotional ties to his extended family as well. He is a happy, loving, well-adjusted child — which reflects upon the environment in which he has been raised. There is no evidence that Jerianne has in fact alienated Jon Louis from David or that he is living in an environment which will alienate him from David. Because the parties live a significant distance apart, a joint custody order that results in a 50/50 sharing of time is not practical. We find no compelling reason to uproot this child who is doing well in his present environment. Accordingly, we vacate the judgment of the trial court.
We award joint custody of the minor child to Jerianne and David. Jerianne is named as the domiciliary parent.
David is to have physical custody of the minor child every other weekend from Friday at 6:00 P.M. until Sunday at 6:00. P.M. Custody will be transferred between the parties at the McDonald’s parking lot in Jasper, Texas. The parties are prohibited from videotaping either the drop-off or pick-up of the child.
David is further granted visitation in the summer which, in addition to his regular weekend visitation, shall include the month of July. David shall have visitation on Father’s Day weekend, regardless of whether that is his designated weekend. Jerianne shall have custody of the minor child every Mother’s Day weekend regardless of whether it is her regular weekend. Neither party is entitled to seek additional weekend visitation should this interfere or conflict with regular weekend visitation.
UnDavid will have physical custody of the minor child on the Thanksgiving school holiday and on spring break on odd numbered years. The Christmas school holiday will be divided between the parties with Jerianne having physical custody of the minor child the first week in odd num *1291 ber years. Jerianne will have physical custody of the minor child on the Thanksgiving school holiday and on spring break on even numbered years.
The minor child is to continue to see a therapist appointed by the trial court until the therapist deems it is no longer necessary. The case is remanded for appointment of a therapist.
Jerianne is ordered to communicate all matters pertaining to school and health to David. Jerianne is authorized to make all major decisions on behalf of minor child. David can make any necessary medical decisions regarding the minor child while the minor child is in his care and custody.
Both parents shall allow the other parent phone access at 5:00 P.M. on Saturday. Jon Louis shall be granted phone access to the other parent at any other times he wishes.
Neither party is to speak disparagingly of the other parent in the child’s presence. Neither parent shall allow relatives or others to speak disparagingly of the other parent in the child’s presence.
Considering the nature of the testimony and the extent of the extremely personal information about all parties involved, especially Jon Louis, a minor child, we further order the entire record in this case sealed.
JUDGMENT OF THE TRIAL COURT VACATED.
JUDGMENT RENDERED.
REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION.
RECORD ORDERED SEALED.
PAINTER, J., dissents and assigns written reasons.